### MAYOR, ETC., OF THE CITY OF NEW YORK *v.* CURRAN *et al.*

*(Common Pleas of New York City and County, Equity Term.* January 24, 1889.)

1. DEED—CONSTRUCTION—RESERVATIONS—CONDEMNATION—AWARD.

Where a deed, excepting "so much of said land as has been taken by public authority, if any has been taken," etc., "and subject also to any assessment confirmed

since" a certain date, is delivered after condemnation proceedings have been insti tuted, but before the commissioners' report is made or confirmed, the grantee is entitled to the award for the appropriated portion of the granted premises. The exception in the deed is intended to protect the grantor from any claim which the grantee might assert in case some portion of the premises had been appropriated, and not to reserve any right therein to the grantor.

2. SAME—CONVEYANCE AFTER AWARD.
Where, after the commissioners' report had been confirmed, and the title to the appropriated portion thereby vested in the city, the grantee conveys the property by the same description as in his own deed, including the exception, his grantee is entitled to the award.

Action in the nature of interpleader, brought by the mayor, aldermen, and commonalty of the city of New York against Thomas Curran, Edward Jacobs, and John W. Murray, and others, executors of Andrew J. Dam.

*R. H. Smith,* Asst. Corp. Counsel, for plaintiff. *John J. Macklin,* for defendant Curran. Defendant Jacobs, *in pro. per. E. B. Amend,* for executors.

BOOKSTAVER, J. This is an action in the nature of an interpleader, brought by the mayor, etc., to determine the rights of three separate claimants to a. fund of $2,188.88 on deposit with the comptroller, awarded as damages for the taking of certain lands in the Twenty-Third ward, designated on the damage map of the commissioners of estimate and assessment in the matter of opening and widening Gerard avenue by the number "25;" and also to determine who shall pay the assessment for benefit on the same property, amounting to $646.78. The defendants Curran, Jacobs, and the executors of Dam, each claim the award,—the latter on the ground of a reservation in the deed made by them to Jacobs; Jacobs on the ground that he was the owner of the land at the time of the confirmation of the commissioners' report; and Curran on the ground that a clause in the deed from Jacobs to him gives the right of the award to the former.

Andrew J. Dam, in his life-time, was the owner of the property in controversy, together with other adjacent thereto. On the 5th of December, 1887, his executors entered into a contract to convey the four lots in question to the defendant Jacobs, and in pursuance thereof executed and delivered a deed dated January 3, 1888, which was recorded on the 16th of January, 1888. This deed described the four lots as they were originally plotted on a map entitled "Map of Inwood, Towns of Morrisania and West Farms, County of Westchester and State of New York," dated June 1, 1868, and filed in the office of the register of Westchester county, and as they remained until the confirmation of the report hereafter referred to. The property abutted on Gerard avenue, and the *habendum* clause of the deed contained the following: "Except so much of said·land· as has been taken by public authority, if any has been taken, for the widening and straightening of Gerard avenue, and subject to any change in the line of said avenue proposed by the department. of public parks before the delivery of this deed, * * * and subject also to any assessment confirmed since January 6, 1888." The defendant Jacobs, on the 27th of February, 1888, conveyed the four lots in question to the defendant Curran. The description of the property, and the conveying clause, was. precisely the same in this deed as it had been in the deed from the executors. of Dam to him, and sets forth that it was "the same premises heretofore conveyed to the party hereto of the first part [Jacobs] ·by John W. Murray and Andrew J. Dam, executors, etc., by deed dated January 3, 1888, and recorded in the office of the register of the city and county of New York, January 16, 1888." The *habendum* clause of this deed contained the same exception as that in the deed from the executors of Dam to Jacobs, but does. not convey the land subject to the assessment. This deed was recorded on. the 28th of February, 1888. At the time the contract between the executors. of Dam and Jacobs was entered into, commissioners had been appointed, and

there were proceedings pending for the widening and straightening of Gerard avenue. The report of these commissioners was duly made to the supreme court, and on the 23d day of January, 1888, their report was confirmed. It is therefore clear that on the 3d day of January, 1888, the executors of Dam were possessed in fee of the whole of the four lots conveyed by them to Jacobs, unaffected in any way by the proceedings which were pending, and that Jacobs took title to the whole of the four lots. *Fisher* v. *Mayor*, 67 N. Y. 73. The exception in the *habendum* clause, I apprehend, was for no other purpose than to protect the executors from any claim which Jacobs might make against them in case the report of the commissioners had been confirmed without their knowledge, so that they could not give good title to the whole of each lot. It certainly cannot be construed to reserve to them the right to any damage award that might be made in favor of those lots after they had parted with their title thereto. At that time, as far as the parties knew, no award had been made; and it was uncertain whether the same would be more or less than the amount assessed against the lots; and indeed it would seem they were under the impression the assessment would be larger than the award, for they expressly provided, in case an assessment should be made after the 6th of January, the land conveyed should be subject to it, and this would seem to carry with it the right to the award, whatever it was. I think, therefore, that the claim of the executors of Dam cannot be sustained.

As between Jacobs and Curran, the question at first sight presents greater difficulty. Jacobs was the owner of the property at the time that the report of the commissioners was confirmed. Upon the confirmation of that report, that part of the property included in damage map No. 25, became vested in the mayor, aldermen, and commonalty of the city of New York, for the purposes for which it was condemned. Consolidation Act, § 990; *Fisher* v. *Mayor*, *supra.* Jacobs claims that the award then became due and payable to him; and he might have cited, in support of his contention, *King* v. *Mayor*, 102 N. Y. 171, 6 N. E. Rep. 395, and *Peters* v. *Carleton*, 1 N. Y. Supp. 531. The strongest way in which the argument in his behalf might be presented I conceive to be that under the authorities last quoted the award for damages then became due and payable; that they were in the nature of damages for a trespass or wrongful taking of property, and vested in him on the confirmation of the commissioners' report as a chose in action; that this chose in action was separate from the remaining real estate, and was not conveyed by the deed subsequently given, for that purported to be a conveyance of real property only, and did not convey the right of action personal to Jacobs, especially as that was in the nature of damages for a trespass. The answer to this position is, I think, that Jacobs, by the exception in the *habendum* clause in his deed to Curran, professed not to know whether the proceedings of the commissioners had been confirmed or not; and I think the intention of the parties in making that exception was the same as it had been in the case of the deed by Dam's executors, and not for the purpose of reserving any right in the property to the grantor. This is made very apparent from the fact that in the conveying clause of the deed Jacobs professed to convey the entire property which he had received from the executors of Dam, without any loss or diminution whatever; that is to say, he professed to convey all of his rights in said property to Curran, just as he had received it from the executors of Dam. This clause also conveys not only the hereditaments and appurtenances, as was the case in *King* v. *Mayor*, *supra*, but also "all  *  *  * property, possession, claim, and demand whatsoever, as well in law as in equity," of Jacobs, to the property in question, with its appurtenances. Now this deed was not effective to convey the property to Curran as Jacobs had received it from the Dam executors, because the fee to a portion of it had vested in the city. There was, however, a claim or demand growing out of that property against the city to the owner of the lots, which I think it was the intention of the parties

to convey to Curran; otherwise it would follow that, while Jacobs professed to convey the entire property to Curran for a sum he was willing to take for the whole, and while he concededly did not convey the whole, yet he would be twice paid for the part he did not convey,—once by Curran and once by the city,—while Curran, who did not get what he bargained for, would be left remediless. This I conceive to be unjust. It would seem to be more in accordance with equity to hold that Curran, not having received all the land that Jacobs professed to convey, is entitled to the damages awarded for the taking of that part which he did not receive, in lieu of the land. In my judgment, therefore, Curran is entitled to that part of the award arising from the taking of a portion of the four lots in question. But as damage No. 25 was awarded in bulk to the eight lots formerly belonging to the Dam executors, of which only four were conveyed to Curran, he obviously is entitled to so much of the award only as was intended as compensation for the taking of a portion of these four lots. The remainder of such award should go to whoever is the owner of the other four; and as the quantity of land taken differs in respect to each lot, and there is nothing before me from which I can ascertain the varying amount taken from each, it is impossible for me to determine what part of the award belongs to the four lots in question. The assessment for benefit is also laid upon the eight lots in bulk, and, as the benefit may differ as to each lot, and I have no *data* from which I can determine that, it will be necessary to order a reference, to ascertain who is entitled to the award of damages to the four lots adjoining the four in controversy, the amount of damage which should be awarded to each lot, and the portion of the assessment which should be imposed upon each lot separately. Inasmuch as the assessment is now a lien upon all the lots in the hands of the present owners, I think the assessment, after being equitably apportioned to each lot, should be first deducted from the damage ascertained for each, and the difference paid to the persons entitled to receive it as above indicated.