VAN BRUNT, P. J., and DANIELS, J., concurred.

Judgment for defendants, with costs.

---

IN THE MATTER OF THE PETITION OF JOHN CULLEN TO VACATE AN ASSESSMENT FOR REGULATING, ETC., FIRST AVENUE, FROM NINETY-SECOND TO ONE HUNDRED AND NINTH STREETS.

*A certificate given under section 1, chapter 557 of 1880, as to the amount to be assessed does not deprive the property owner of the rights conferred by chapter 338 of 1858 (section 898 of chapter 410 of 1882).*

Upon an appeal from an order reducing an assessment upon the property of the petitioner, it appeared that a certificate had been given by the officers named in chapter 557 of 1880, which authorized and directed the board of assessors of the city of New York to assess upon the property intended to be benefited

in the manner provided by law for the making of assessments for local improvements, such expense as should, by the comptroller, the counsel to the corporation and the commissioners of public works of the city of New York, be certified to have been justly and actually incurred by the mayor, aldermen and commonalty of the city of New York for regulating, grading and setting curb and gutter stones and flagging sidewalks in the First avenue, from Ninety-second to One Hundred and Ninth streets, in said city.

*Held,* that the certificate of the officers named in that act was not so far conclusive upon the property owners as to deprive them of the rights conferred by chapter 338 of the Laws of 1858, now embodied in section 898 of the consolidation act, chapter 410 of 1882.

That the certificate provided by the act, chapter 557 of 1880, was simply a substitute, rendered necessary by the peculiar circumstances of the case, for the ordinary certificate required by section 5 of chapter 556 of 1880.

That the certificate provided by the act, chapter 557 of 1880, differs from the ordinary certificate only in adding two other officers to the head of the department, and in requiring them to certify that the expense was " justly as well as actually " incurred, and that there was no special significance, so far as the property owners were concerned, in the use of the word " justly " in this connection.

That there was no suggestion in that act that the certificate of these officers " *as to the justice*" of the expenditure was to be conclusive in the judicial sense, any more than their certificate *as to the actual expenditure.*

That the word "just" was probably inserted in the act under consideration because of the questions which had arisen as to the legality and honesty of the existing claims. It was not, however, intended thereby to legalize void contracts nor to authorize a certificate for rejected claims, thereunder.

That, by the passage of chapter 648 of 1881, the intention of the legislature was, in substance, to legalize a void contract and to compel payment thereunder, the same as though it had been originally authorized.

That the city was thus concluded, and so were the property owners, so far as the illegality of the contract was concerned, and that the latter could not longer avail themselves of that illegality to question the right to enforce payment under such contract of the fair value of the work, but they could still question the amount which was to be paid under such contract, the quantity and the value of the work certified.

That the reductions made by the order appealed from should be sustained with the exception of the sum of $12,725.96, which was not assessed upon the property owners, but upon the city at large, and which should, consequently, be deducted from the total cost of the improvement.

*Matter of McCready* (27 Hun, 421; affirmed, 90 N. Y., 652) followed

APPEAL by the petitioner and by the city of New York from portions of an order made at a Special Term held in the county of New York under date of February 19, 1889, which was entered in the office of the clerk of the county of New York, and which

directed the reduction of an assessment upon petitioner's lot, to the extent of the sum of $1,862.17.

The following opinion was delivered at Special Term by the justice denying the motion :

" O'BRIEN, J. It would be difficult to cite a more flagrant instance than the one here presented of a legislative act attempting to fasten on property owners a burden which the courts and the local authorities had stamped as fraudulent and void. After defeat in the courts, the legislature was successfully appealed to and a mandatory act (chap. 648, Laws of 1881) passed, which compelled the local authorities to assess, as part of the cost, work done under a contract which was fraudulent in its inception, was never complied with and was finally abandoned.

" The case of the *Town of Guilford* v. *Board of Supervisors of Chenango County* (13 N. Y., 143) has been followed and cited with approval in too many cases to be now questioned, and upholds the constitutional right of the legislature to pass such an act. But where the equities are as strong in favor of the property owner as in this case the courts will endeavor to find a way to redress the grievance and right the wrong.

" Without, therefore, referring to the different acts cited by counsel for and against the right of the court to inquire into and afford relief, I am of opinion that the certificate filed in 1884, pursuant to chapter 398, Laws 1871, as amended in 1880 (chap. 557), is not conclusive upon the power of the court to afford relief, as provided by chapter 338 of the Laws of 1858, subsequently embodied in the consolidation act. (Sec. 898.)

" The extent of the relief which the court can grant, however, is controlled by section 12, chapter 550, Laws 1880, which provides that " no existing provision of law shall enable or permit any court to vacate or reduce any assessment * * * otherwise than to reduce any such assessment to the extent that the same may be shown * * * to have been, in fact, increased in dollars and cents by reason of fraud or substantial error.'

" The items making up the whole assessment may be divided into four classes :

1st. Amount paid under chapter 648, Laws 1881.... $109, 799 87
2d.  Cost of what was done by day's work......... 73, 268 81
3d.  Cost of work under special contracts.. ....... 34, 501 16
4th. Cost under contract for completion, 1882...... 23, 523 62
     To this should be added surveyor's charge..... 1, 996 77
     Michaels' claim............................. 317 03

        Total assessment ....................... $243, 407 26

"All of this sum was assessed upon the property on the line of the work, except $12,725.96, which was borne by the city at large.

"The first three items are alone objectionable, it being conceded that the others were proper charges.

"As the petitioner can only be allowed a reduction to the fair cost of the work, it becomes necessary to determine from the testimony what this amounts to, and how much the objectionable items should be reduced.

"I. As to the first item of..................... $109, 799 87
"It is made up as follows:

148,291.42 cubic yards filling ........ $96, 389 42
125 lineal feet culvert .............. 5, 750 00
Interest .......................... 7, 660 45
                                     ———————  100, 799 87

"If we calculate the filling at the fair price thereof, as testified to, viz., fifty cents a cubic yard, we have the value thereof as $74,145.71. The difference between this sum and $96,389.42 shows what should be deducted, viz., $22,244.71.

"II. As to item of $73,268.81 for filling put in by day's work.

"At fifty cents per cubic yard, makes $31,954.27. The difference between this latter sum and $63,908.55 is $31,954.28.

"III. The item of $34,501.16, paid for filling in by special contracts, at fifty cents, it would have cost $34,091.01, and the difference to be deducted is $410.15

"It has been urged that the $12,725.96 not assessed on the property owners, but on the city at large, should be addded to the assessment.

" *The Matter of McCready* (27 Hun, 421) is authority for making the amount to be borne by the property proportionate to the amount actually assessed on property and the fair value thereof.

" The city gets the benefit of the highest value fixed, and the outside measurements for all filling, exclusive of that performed under day's work and by special contract, and it should not, therefore, be credited with this $12,725.96.

" My conclusions, therefore, are that the following reductions should be made :

| | |
|---|---:|
| I. The $109,799.87 item by...................... | $22, 244 71 |
| II. Reduction of day's work item................. | 31, 954 27 |
| Special contract ........................... | 410 15 |
| Total reduction......................... | $54, 609 13 |

" Ordered accordingly."

*John C. Shaw*, for the petitioner.

*George L. Sterling*, for the city.

BARRETT, J. :

We concur in the conclusion arrived at by Mr. Justice O'BRIEN, that the certificate of the officers named in the act of 1880 (chap. 557, § 1) is not so far conclusive upon the property owners as to deprive them of the rights conferred by chapter 338 of the Laws of 1858, now embodied in the consolidation act (§ 898). We need only supplement Mr. Justice O'BRIEN's careful opinion with a brief statement of our reasons for this concurrence. We think that this certificate was simply a substitute, rendered necessary by the peculiar circumstances of the case, for the ordinary certificate required by law. (Laws of 1880, chap. 556, § 5.) Under this latter act all certificates of expense actually incurred are to be made by the officers charged with the execution of the work. This would not have answered in the case of the present improvement, for the reason that it was an old matter which required special investigation and consideration, running through several administrations. Work had been actually done under a contract which the courts had pronounced illegal, and some filling had been done by day's work and special contracts, which were also unauthorized. It would have been

impossible for the successor (in office at the time of the passage of the act) of these heads of the department to give the ordinary certificate. That certificate comtemplated either personal knowledge of work done under his own eye or clear and specific information on file in his department, information which admitted of no doubt and which could be readily verified. As the making of a just and accurate certificate, with regard to the improvement in question, would necessarily call for something more than appeared on the books of the department, would, in fact, require something of an investigation, the act under consideration was passed. The certificate there provided for differs from the ordinary certificate only in adding two other officers to the head of the department, and in requiring them to certify that the expense was " justly " as well as " actually " incurred. There is no special significance, so far as the property owners are concerned, in the use of the word " justly " in this connection. If in ordinary cases the head of the proper department were required to certify that the expense was justly and actually incurred, the rights of the property owners under the act of 1858 would not be taken away. There is no greater reason why those rights should be taken away because of the use of the word justly in the act under consideration. There is no suggestion in that act that the certificate of these officers *as to the justice* of the expenditure is to be conclusive, in a judicial sense, any more than their certificate *as to the actual expenditure.* It was, of course, conclusive upon the board of assessors, and that board was bound to assess the amount so certified, just as in ordinary cases the same board is directed to assess " the aggregate amount of such certificates " furnished to it by the head of the department charged with the execution of the work and by the comptroller. (Laws of 1880, chap. 556, § 5, subd. 1, 2.)

The word " justly " probably was inserted in the act under consideration because of the questions which had arisen as to the legality and honesty of the existing claims. It was not, however, intended thereby to legalize the void contracts, nor to authorize a certificate for the rejected claims thereunder. These claims did not, at the time of the passage of the act, constitute an expense incurred, *at all,* either justly or actually. Consequently, no certificate could be given without further legislation, nor, indeed, until the comple-

tion of the improvement. The next year (1881) an act was passed which required the city, upon the certificate of certain public officers, to pay the assignee of the void contract the value of the work done under it. (Laws of 1881, chap., 648.) Under this act a certificate was given whereby the city was compelled to pay a large amount of money to this assignee, and subsequently the officers named in the act of 1880, under consideration, certified the amount so paid as part of the expense justly and actually incurred by the city for this improvement. It is quite plain that the intention was, in substance, to legalize the void contract and compel payment thereunder, the same as though it had been originally authorized. The city was thus concluded and so were the property owners, so far as the illegality of the contract was concerned. They could no longer avail themselves of that illegality to question payment *under the contract* of the fair value of the work, as a fraud upon them. But they could still question the amount paid, namely, the *quantum and value* of the work certified. Their rights, under the act of 1858 (as embodied in the consolidation act) remained unaffected. These rights are not foreclosed, directly or indirectly. The relief afforded by that act is general and remedial. As now modified, it substitutes justice for technicality and limits the property owner to a reduction commensurate with the real value of the improvement. (Consol. Act, § 903.) The property owners should not be deprived of this measure of justice, unless the courts are expressly forbidden to mete it out in a particular instance. It certainly should not be withheld upon a doubtful implication. In the present instance the property owners are concluded as to all reasonable and just payments made for work actually done, but are still permitted to show that the assessment has been, "in fact, increased by reason of fraud or substantial error;" in other words, to show grossly excessive charges and payments. The effect of these statutes, as thus construed, was to remove the chaos in which this improvement was imbedded, to settle old, rejected and even illegal claims; to complete the long delayed work, and, finally, to authorize an assessment. But clearly it was not intended in thus providing for rejected and illegal claims to close the door upon the property owners, and to tell them that, although in ordinary cases they may, under this remedial statute, show fraud in the *quantum* of the work, and in grossly

excessive charges, yet that in this exceedingly questionable matter the same remedial statute shall be inoperative. The reductions made by Mr. Justice O'Brien accord with the evidence, and should, therefore, be sustained with a single exception. The sum of $12,725.96 was not assessed upon the property owners, but upon the city at large. It should, consequently, be deducted from the total cost of the improvement. Upon the authority of the *Matter of McCready* (27 Hun, 421; affirmed, 90 N. Y., 652), the assessment should, accordingly, be reduced in the ratio of the reasonable cost of the work to the amount actually assessed upon the property, the latter being the total cost, less this sum of $12,725.96.

The order appealed from should be modified in the particular last mentioned, and as modified affirmed, without costs of this appeal.

Van Brunt, P. J., and Daniels, J., concurred.

Order modified as specified in opinion, and as modified affirmed, without costs of this appeal.