### KINSELLA *v.* CITY OF AUBURN.

*(Supreme Court, General Term, Fifth Department.* October 19, 1889.)

1. MUNICIPAL CORPORATIONS—SEWER ASSESSMENTS—LOCAL IMPROVEMENTS.

A resolution of the city council of Auburn for the construction of a sewer is a proceeding authorizing a local improvement, the expense thereof being assessed on the property benefited, and not a public one, within Laws N. Y. 1879, c. 53, § 35, as amended by Laws 1885, c. 255, § 5, providing that no resolution authorizing any public improvement shall have any effect unless approved by the mayor within four days after its passage, or, failing of his approval, is repassed by the concurrent vote of eight aldermen.

2. SAME—AWARDING CONTRACT—FAILURE OF LOWEST BIDDER.

After bids for constructing a sewer were opened, and the council had passed a resolution awarding the contract to the lowest bidder, who failed to enter into contract, it was not necessary to advertise again, as the council might, at its next meeting, rescind the former resolution, and award the contract to the next lowest bidder; Laws N. Y. 1879, c. 53, § 111, providing that, the next meeting after proposals are made, they shall be presented to the common council, and be opened and considered. "The common council may reject any or all of the proposals, if they shall deem it for the interest of the city If either of said proposals is deemed favorable to the city, and the bond accompanying the same is acceptable, the common council may direct the mayor and city clerk to contract with the party whose proposal is accepted."

3. SAME—EXCESSIVE ASSESSMENT.

Where the proposals for bids referred to other materials, but not to lumber, a provision in the contract allowing for lumber without consent of the council is unauthorized, and the assessment for its payment is in that particular excessive.

4. SAME—INTEREST ON COST OF WORK.

An assessment for interest for one year on the cost of the improvement was not erroneous, it being authorized by Laws N. Y. 1885, c. 255, § 27.

5. SAME—CORRECTION OF ASSESSMENT.

Where the amount of an erroneous assessment for local improvements can be ascertained, the entire assessment is not thereby invalidated, but the court may, in the exercise of its equitable power, correct the error.

Appeal from special term, Cayuga county.

Action by Thomas F Kinsella against the city of Auburn to vacate an assessment to pay the expense of constructing a sewer. The complaint was dismissed at the trial, and plaintiff appeals.

Argued before BARKER, P. J., and DWIGHT and MACOMBER, JJ.

*L. A. Pierce,* for appellant. *John W. O'Brien,* for respondent.

BARKER, P. J. The action was brought to vacate an assessment which was apparently a lien upon the plaintiff's premises in the city of Auburn. It was levied pursuant to proceedings taken to pay the expense of constructing a sewer in Van Anden street. The regularity of the proceedings up to and including the adoption by the common council of the resolution authorizing the construction of the sewer is not questioned; but it is contended that,

to render the resolution effectual, its approval by the mayor, or its readoption by the common council, was required by the statute, which provides that no resolution authorizing any public improvement shall have any effect unless approved by the mayor in writing within four days from the time of its passage; or in case it is not so approved, or is disapproved by him, the common council may at its next regular meeting repass the same by the concurrent vote of the eight aldermen. Laws 1879, c. 53, § 35, as amended by Laws 1885, c. 255, § 5. It was not so approved or repassed. The term "public improvement" is not defined by the statute; and, while the purpose of the work in question is public, it comes within what is designated as a "local improvement," which is a term also used in the same statute, and applied to work, the expense of which is assessed upon the property benefited by it. The distinction between public and local improvements may be so construed as to embrace within the former those which are charged upon all the taxable property within the municipality, while the fund to pay the expense of the latter is raised by means of local assessments upon the property supposed to be benefited by them. This, we think, is the meaning of those terms, respectively, as used in the defendant's charter. Dill. Mun. Corp. § 596. It follows that the approval of the resolution by the mayor, or its repassage by the common council, was not essential to render it effectual.

The city clerk proceeded to advertise for sealed proposals as directed, and afterwards report was made to the common council that three proposals were received,—one by Sullivan, one by Sisson & Ocobock, and another by Dillon; and the committee to whom the matter was referred reported that Sullivan was the lowest bidder, and recommended that his proposal be accepted. The report was adopted, and the mayor and the city clerk were directed to reduce to writing and to execute the contract in behalf of the defendant. This, for some undisclosed reason, does not appear to have been done; and, at a subsequent meeting of the common council, resolutions were passed rescinding the one by which the contract was let to Sullivan, and directing the mayor and city clerk to enter into a contract with Sisson & Ocobock upon their proposal before mentioned. The contract was made with them, and they proceeded with the work. It is now argued that the contract was made without authority, because—*First*, the acceptance of the proposal of Sullivan operated to produce a contract with him, and the power of the common council upon the notice given for proposal was then exhausted; and, *second*, that they could not lawfully enter into a contract with another without proceeding *de novo* to advertise for proposals. The statute upon the subject provides that, at the next meeting after proposals are made, they shall be presented to the common council, and be opened and considered; that "the common council may reject any or all of the proposals, if they shall deem it for the interest of the city. If either of said proposals is deemed favorable to the city, and the bond accompanying the same is acceptable, the common council may direct the mayor and city clerk to contract with the party whose proposal is accepted." Laws 1879, c. 53, § 111. The statute does not in terms require the common council, at such first meeting, to complete its action and determination upon the subject of the proposals, and they evidently could at that meeting lawfully consider any action then taken in that respect. By the final acceptance of one of the proposals, all there was for that body to do upon that subject was performed. The matter was then with the mayor and clerk to consummate it by entering into a contract with the successful bidder. This, within the contemplation of the statute, was essential to the completion of an agreement with him to do the work. It, for some cause, had not been done when the common council were in session upwards of three weeks after. It was then within its power (unless some right had been vested which would be prejudiced) to reconsider the resolution of the previous meeting; and, that being done, the proposals were made for their consideration. This was the situa-

tion which enabled it to accept the proposal of the parties with whom the contract was finally made. It may be assumed, nothing appearing to the contrary, that the common council acted upon knowledge or information of facts, so far as related to Sullivan, which permitted them to take the action which was taken by way of reconsidering the resolution of acceptance of his proposal; and whether or not the action of the common council in accepting the proposal of the other parties with whom the contract was made was abusive of its powers or discretion in that respect is not a question here for consideration.

The specifications upon which the proposals were made required that the sewer be made of brick; and they provided that if, in excavating the bottom, they found it soft from the presence of quicksand or muck, or from any other cause, so as not to furnish a good foundation, wood inverts, reaching on each side one-third of the way to the top of the sewer if of tile, and one-half if of brick, should be laid in the bottom. The proposal of Sisson & Ocobock was to construct the sewer in accordance with the specifications, and furnish all labor and materials, at the price named. It made no reference to any lumber. The direction of the common council was to enter into a contract with them, according to the plans and specifications, at the price bid by those parties. The contract as made provided for payment to them of $14 per thousand feet for lumber regularly used for bottom and foundations in the construction of the sewers. In the bill rendered by the contractors, and allowed, the amount of which went into the assessment, was included $72.25 for lumber, and $70.60 for making and laying inverts in quicksand, neither of which was mentioned in the proposal. It does not appear that the common council consented to the insertion of the lumber provision in the contract; and the trial court found that the contract was never reported to or before that body. The power of the mayor and city clerk was only to pursue the direction of the common council in making the contract in which the lumber provision was inserted without authority. As, by the proposal, the contractor proposed to furnish all the labor and materials, the item for lumber, and for making and laying the inverts, in the bill rendered, were not legitimately embraced in the amount assessed; but that did not have the effect to invalidate the entire assessment. The proceedings were within the statute, and regular. The assessment, by reason of including those items, was merely excessive, and the excess is easily and accurately ascertained, and correction may be made by reduction of the amount which was assessed against the plaintiff's lots. This, we think, clearly within the equitable power of the court in this action. *In re Asylum,* 69 N. Y. 353; *In re Railroad Co.,* 102 N. Y. 301, 6 N. E. Rep. 590; *In re Auchmuty,* 90 N. Y. 685. The amount of the excess in the plaintiff's assessment is small, but he is nevertheless entitled to the abatement which the proper reduction will produce. The sewer was not made entirely of brick. Twenty rods of it was constructed of tile. This is argued as an objection to the validity of the assessment. No circumstances appear as to the cause of this departure from the terms of the contract, nor does it appear whether this work is better or less expensive than brick. The specifications, which were practically part of the contract, provided that the work should be done under the direction of the city surveyor, to whom was reserved the right to modify and amend them in such matters of detail as in his judgment should be advantageous to the work, and for the best interests of the city. It may be assumed that, for some cause which in his judgment rendered the modification desirable, this portion of the work was constructed pursuant to the direction or with the approval of the surveyor. It will not be presumed that he acted otherwise than in good faith, (Laws 1885, c. 255, § 34,) or that the plaintiff was prejudiced by this change, (*In re Merriam,* 84 N. Y. 596; *In re Society,* 70 N. Y. 476; *In re Mead,* 74 N. Y. 216; *In re Insurance Co.,* 89 N. Y. 530.)

In the assessment was included the interest, at the rate of 4 per cent., for one year, upon the amount of the expense of the work. This, it is claimed, was error, because the statute provided that the common council should, to pay the expense of the work, borrow money payable in two installments,—six months and a year,—and issue bonds accordingly; but it will be observed that the statute also directs that the interest upon the amount until the second installment becomes due shall be added to the cost for the purposes of the assessment. Laws 1885, c. 255, § 27. There is an apparent reason for this provision of the statute, and for a construction of it which supports the action of the common council in that respect, in the fact that the expiration of the time which may follow payment by the city before the proceedings had to perfect the assessment, and collected, may result in reimbursement. Sections 28, 30, 31. A party may take the benefit of a discount by early payment. Section 31. The statute seems to have been observed upon the question of interest.

The contention that the assessment "was inequitable, unjust, and oppressive," and therefore void, is upon the assumption that other property than that covered by the assessment should have been embraced within it. No evidence appears in the record which required the conclusion of the trial court that the assessors failed to perform their duty in that respect, in making the assessment; nor upon the evidence or facts found can it be here determined that any omitted property should have been included with that assessed for the expense of constructing the sewer. The compensation of the inspector was a proper charge to go into the assessment. Section 27; *In re Merriam*, 84 N. Y. 596; *In re Lowden*, 89 N. Y. 548. The amount included for such compensation was $218. That was done pursuant to the resolution of the common council that such was its amount. The trial court found that it in fact amounted to only $206. The error produced an excess of $12 in the assessment, which, added to the $142.05 for lumber and putting in the inverts before mentioned, makes $154.85, in excess of the amount for which the local assessment should have been made. The cases cited by the plaintiff's counsel do not support his proposition that the court cannot direct the reduction of the assessment on his property. It, of course, cannot be done unless the excess clearly appears in such manner as to permit it. In *Hassan v. Rochester*, 67 N. Y. 528, property which should have been assessed was omitted; and such was the situation in *Re Public School*, 75 N. Y. 324. In the latter case, why it could not be done was given by the court in the remark: "There was no fixed sum or criterion for the court to act upon. The court would occupy the position of the assessors, and the assessment would be according to its judgment, instead of the judgment of the assessors." A court of equity has the power, and will exercise it, to correct mistakes, when it clearly appears that it may be done without prejudice, and thus protect and preserve the rights of the parties concerned. It follows that the judgment should be modified by striking out so much as dismisses the plaintiff's complaint, with costs; and also to restrain the defendant from collecting so much of the assessment as is excessive, as is decided in this opinion, without costs to either of this appeal. All concur.