THOMAS F. KINSELLA, Appellant, *v.* THE CITY OF AUBURN, Respondent.

*Supreme Court, Fifth Department, General Term, October 19, 1889.*

1. *Municipal corporations. Improvements.*—A local improvement is one, the expense of which is met by a fund raised by means of local assessments upon the property supposed to be benefitted thereby.
2. *Same.*—Public improvements are those which are charged upon all the taxable property within the municipality.
3. *Same.*—The building of a sewer is a local improvement.
4. *Same.*—In such case, no approval by the mayor, or repassage by the common council is essential to render the resolution authorizing the improvement effectual.
5. *Same.*—The common council, when in session, has power, until a contract is entered into with the successful bidder, to reconsider the resolution of acceptance and accept the proposal of another party.
6. *Same.*—The entry of improper items in the amount assessed does not invalidate the entire assessment.
7. *Same.*—The owner is entitled to an abatement, though the excess of his assessment is small.
8. *Same.*—The city surveyor, in making changes from the specifications, will not be presumed to have acted otherwise than in good faith, or the owner to have been prejudiced thereby.
9. *Same.*—The compensation of an inspector of the construction of local improvements was held to be a proper charge to go into the assessment.
10. *Same.*—No reduction in the assessment will be directed, unless the excess clearly appears in such a manner as to permit it.
11. *Same.*—Where the excess can be easily and accurately ascertained, the correction may be made in the amount assessed against each lot by deducting it therefrom.

Appeal from a judgment entered upon the decision of the Cayuga county special term, dismissing the plaintiff's complaint.

*L. A. Pierce*, for appellant.

*John W. O'Brien*, for respondent.

BARKER, P. J.—The action was brought to vacate an assessment which was apparently a lien upon the plaintiff's premises in the city of Auburn. It was levied pursuant to proceedings taken to pay the expense of constructing a sewer in Van Anden street. The regularity of the proceedings up to and including the adoption by the common council of the resolution authorizing the construction of the sewer is not questioned, but it is contended that to render the resolution effectual, its approval by the mayor or its re-adoption by the common council was required by the statute, which provides that no resolution authorizing any public improvement shall have any effect unless approved by the mayor in writing within four days from the time of its passage, or in case it is not so approved, or is disapproved by him, the common council may, at its next regular meeting, repass the same by the concurrent vote of the eight aldermen. Laws of 1879, chapter 53, § 35, as amended by Laws of 1885, chapter 255, § 5. It was not so approved or repassed. The term "public improvement" is not defined by the statute, and while the purpose of the work in question is public, it comes within what is designated as a "local improvement," which is a term also used in the same statute, and applied to work, the expense of which is assessed upon the property benefited by it. The distinction between public and local improvements may be so construed as to embrace within the former those which are charged upon all the taxable property within the municipality, while the fund to pay the expense of the latter is raised by means of local assessments upon the property supposed to be benefited by them. This we think is the meaning of those terms respectively as used in the defendant's charter. Dillon's Municipal Corporations, § 596.

It follows that the approval of the resolution by the mayor, or its repassage by the common council, was not essential to render it effectual. The city clerk proceeded to advertise for sealed proposals as directed, and afterwards report was made to the common council that three proposals were re-

ceived, one by Sullivan, one by Sisson and Ocobock, and another by Dillon, and the committee, to whom the matter was referred, reported that Sullivan was the lowest bidder, and recommended that his proposal be accepted. The report was adopted, and the mayor and the city clerk were directed to reduce to writing, and to execute the contract in behalf of the defendant.

This, for some undisclosed reason, does not appear to have been done, and at a subsequent meeting of the common council resolutions were passed rescinding the one by which the contract was let to Sullivan and directing the mayor and city clerk to enter into a contract with Sisson and Ocobock upon their proposal before mentioned. The contract was made with them, and they proceeded with the work. It is now argued that the contract was made without authority, because, first, the acceptance of the proposal of Sullivan operated to produce a contract with him and the power of the common council upon the notice given for proposals was then exhausted, and second, that they could not lawfully enter into a contract with another without proceeding *de novo* to advertise for proposals. The statute upon the subject provides, that at the next meeting after proposals are made they shall be presented to the common council and be opened and considered, that, " the common council may reject any or all of the proposals if they shall deem it for the interest of the city. If either of said proposals is deemed favorable to the city and the bond accompanying the same is acceptable, the common council may direct the mayor and city clerk to contract with the party whose proposal is accepted." Laws of 1879, chap, 53, § 111. The statute does not in terms require the common council at such first meeting to complete its action and determination upon the subject of the proposals, and they evidently could at that meeting lawfully consider any action then taken in that respect.

By the final acceptance of one of the proposals, all there was for that body to do upon that subject was performed.

The matter was then with the mayor and clerk to consummate it by entering into a contract with the successful bidder. This, within the contemplation of the statute, was essential to the completion of an agreement with him to do the work. It, for some cause, had not been done when the common council were in session upwards of three weeks after. It was then within its power (unless some right had been vested which would be prejudiced), to reconsider the resolution of the previous meeting, and, that being done, the proposals were made for their consideration. This was the situation which enabled it to accept the proposal of the parties with whom the contract was finally made.

It may be assumed, nothing appearing to the contrary, that the common council acted upon knowledge or information of facts, so far as related to Sullivan, which permitted them to take the action which was taken by way of reconsidering the resolution of acceptance of his proposal ; and whether or not the action of the common council in accepting the proposal of the other parties with whom the contract was made was abusive of its powers or discretion in that respect is not a question here for consideration.

The specifications upon which the proposals were made required that the sewer be made of brick, and they provided that if in excavating the bottom they found it soft from the presence of quicksand or muck, or from any other cause, so as not to furnish a good foundation, that wood inverts reaching on each side one-third of the way to the top of the sewer, if of tile, and one-half if of brick, should be laid in the bottom.

The proposal of Sisson and Ocobock was to construct the sewer in accordance with the specifications, and furnish all labor and materials at the price named. It made no reference to any lumber. The direction of the common council was to enter into a contract with them, according to the plans and specifications, at the price bid by those parties. The contract, as made, provided for payment to them of fourteen

dollars per 1,000 feet for lumber regularly used for bottom and foundation in the construction of the sewers. In the bill rendered by the contractors and allowed, the amount of which went into the assessment, was included $72.25 for lumber and $70.60 for making and laying inverts in quicksand, neither of which was mentioned in the proposal. It does not appear that the common council consented to the insertion of the lumber provision in the contract, and the trial court found that the contract was never reported to or before that body. The power of the mayor and city clerk was only to pursue the direction of the common council in making the contract, in which the lumber provision was inserted without authority. As by the proposal, the contractor proposed to furnish all the labor and materials, the items for lumber and for making and laying the inverts in the bill rendered were not legitimately embraced in the amount assessed. But that did not have the effect to invalidate the entire assessment.

The proceedings were within the statute and regular. The assessment, by reason of including those items, was merely excessive, and the excess is easily and accurately ascertained and correction may be made by reduction of the amount which was assessed against the plaintiff's lots. This, we think, clearly within the equitable power of the court in this action. *In re* St. Joseph Asylum, 69 N. Y. 353; *In re* Manhattan R. Co., 102 Id. 301; *In re* Auchmuty, 90 N. Y. 685.

The amount of the excess in the plaintiff's assessment is small, but he is nevertheless entitled to the abatement which the proper reduction will produce. The sewer was not made entirely of brick; twenty rods of it was constructed of tile. This is argued as an objection to the validity of the assessment.

No circumstances appear as to the cause of this departure from the terms of the contract; nor does it appear whether this work is better or less expensive than brick. The specifications, which were practically a part of the contract,

provided that the work should be done under the direction
of the city surveyor, to whom was reserved the right to
modify and amend them in such matters of detail as, in his
judgment should be advantageous to the work, and for the
best interests of the city. It may be assumed that for some
cause which, in his judgment, rendered the modification
desirable, this portion of the work was constructed pursuant
to the direction or with the approval of the surveyor. It
will not be presumed that he acted otherwise than in good
faith, Laws of 1885, chap. 255, § 34, or that the plaintiff
was prejudiced by this change. *In re* Merriam, 84 N. Y.
596; *In re* Hebrew B. O. A. Soc., 70 Id. 476 ; *In re* Mead,
74 Id. 216 ; *In re* Mutual Life Ins. Co., 89 Id. 530.

In the assessment was included the interest at the rate of
four per cent for one year upon the amount of the expense of
the work. This, it is claimed, was error, because the statute
provided that the common council should, to pay the expense
of the work, borrow money, payable in two installments, six-
months and a year, and issue bonds accordingly ; but it will be
observed that the statute also directs that the interest upon
the amount, until the second installment becomes due, shall
be added to the cost for the purposes of the assessment.
Laws of 1885, chap. 255, § 27. There is an apparent
reason for this provision of the statute and for a construction
of it which supports the action of the common council in that
respect, in the fact of the expiration of the time which may
follow payment by the city before the proceedings had to per-
fect the assessment, and collected, may result in reimburse-
ment. §§ 28, 30 and 31. A party may take the benefit of a
discount by early payment. § 31. The statute seems to have
been observed upon the question of interest.

The contention that the assessment "was inequitable,
unjust and oppressive," and therefore void, is upon the
assumption that other property than that covered by the
assessment should have been embraced within it. No
evidence appears in the record which required the conclusion
of the trial court that the assessors failed to perform their

duty in that respect, in making the assessment. Nor upon the evidence or facts found can it be here determined that any omitted property should have been included with that assessed for the expense of constructing the sewer. The compensation of the inspector was a proper charge to go into the assessment. § 27; *In re* Merriam, 84 N. Y. 596; *In re* Lowden, 89 Id. 548.

The amount included for such compensation was $218. That was done pursuant to the resolution of the common council that such was its amount. The trial court found that it in fact amounted to only $206. The error produced an excess of twelve dollars in the assessment, which, added to the $142.05 for lumber and putting in the inverts before mentioned, makes $154.85 in excess of the amount for which the local assessment should have been made. The cases cited by the plaintiff's counsel do not support his proposition that the court cannot direct the reduction of the assessment on his property. It, of course, cannot be done unless the excess clearly appears in such manner as to permit it.

In Hassan *v.* Rochester, 67 N. Y. 528, property which should have been assessed was omitted, and such was the situation. *In re* N. Y. P. E. Public School, 75 N. Y. 324. In the latter case, why it could not be done, was given by the court in the remark " there was no fixed sum or criterion for the court to act upon, the court would occupy the position of the assessors, and the assessment would be according to its judgment instead of the judgment of the assessor."

A court of equity has the power, and will exercise it to correct mistakes, when it clearly appears that it may be done without prejudice, and thus protect and preserve the rights of the parties concerned. It follows that the judgment should be modified by striking out so much as dismisses the plaintiff's complaint with costs, and also to restrain the defendant from collecting so much of the assessment as is excessive, as is decided in this opinion, without costs to either of this appeal.

DWIGHT and MACOMBER, JJ., concur.

NOTE ON "ASSESSMENTS FOR LOCAL IMPROVEMENTS."

Local and public improvements were distinguished in Kinsella *v*. Auburn, 54 Hun, 634.

The building of a sewer is a local improvement.   Id.

Until a contract is entered into, the common council has power to reconsider and accept the proposal of another party.   Id.

The entry of improper items into, does not invalidate the whole assessment.   Id.

The owner is entitled to an abatement though it is small.   Id.

No presumption arises against the surveyor's acting in good faith in making modifications.   Id.

Where the excess is easily and accurately ascertainable, the correction may be made.   Id.

The declaration of the common council, as to the intended use of property condemned, is conclusive.   Matter of City of Buffalo, 39 N. Y. St. Rep. 417.

A resolution of the common council of Buffalo for the acquisition of lands to extend a street was held sufficient in Broezel *v*. Buffalo, 53 Hun, 631.

The notice of application for the appointment of commissioners "to appraise such lands and property," is a sufficient compliance with the charter.   Id.

The changes made by the assessors in the description of part of the land, to correct errors, does not invalidate the assessment as to the property owners, the description of whose land was not changed.   Id.

The common council of Yonkers can apportion the expense of extending a sewer upon the land benefitted.   Cleveland *v*. Yonkers, 115 N. Y. 193.

The Department of Public Works in the city of New York alone has power to construct sewers.   Matter of Wheelock; Matter of Alexander, 51 Hun, 640.

A paving assessment is not a lien until apportioned upon persons, and property benefited.   Harper *v*. Dowdney, 113 N. Y. 644.

The filing with the comptroller of what purports to be an award, without notice to the party, does not satisfy the requirements of the statute.   People *ex rel*. Heiser *v*. Gilon, 121 N. Y. 551.

The fact that the assessors have filed the award in another office does not affect the power of the court to review their action, when it can get the record before it from the officer in whose custody it is.   Id.

Where the commissioners deliver the report on the city's promise to pay the fees on confirmation, they can thereafter maintain a joint action against the city for such fees.   Payne *v*. Brooklyn, 52 Hun, 390.

In the case of mortgages on condemned property, the interest in awards belongs not to the owner, but to the mortgagee, to the extent of the mortgage.   Matter of Lexington Ave., 61 Hun, 625.

To such extent, the owner's interest, as objector, is reduced. Id.

The sale of a portion of the property before the report is made reduces the objector's interest to that extent. Id.

The proof of ownership to be required of the objectors, whose names do not appear in the commissioners' report stated. Id.

Provision of section 1 of chap. 550 of 1880, is directory merely and not mandatory. Matter of Gibbons, 56 Hun, 650.

Interest is properly included in the assessment. Id.

An assessment, in case of the award of a contract without advertisement, is invalid. Matter of Rosenbaum, 119 N. Y. 24.

Chap. 313 of 1874 has no effect upon such case. Id.

The validity of an assessment for work on "Morningside Park," done without a contract, was sustained in Matter of Livingston; Matter of Lyon, 51 Hun, 640.

An assessment for a street is invalid, if the title to, or easement in the land, is not in the public. Copcutt *v.* Yonkers, 59 Hun, 212.

The city engineer has no power to alter a contract for paving the street. Voght *v.* Buffalo, 59 Hun, 627.

After repaving, the city can recover from a railway company its share of expense. Id.

The adoption of an erroneous principle by the assessors in making the assessment renders it void. Id.

The park commissioners of Buffalo may contract, without a previous confirmation of the assessments, for work in paving the streets. Bork *v.* Buffalo, 127 N. Y. 64.

In order to a valid assessment for street sprinkling in the city of Buffalo at a greater expense than $500, § 18 of the charter must first be complied with. Tifft *v.* Buffalo, 27 N. Y. St. Rep. 72.

As to when an ordinance for grading the public streets in the city of Kingston is without authority, see O'Reilly *v.* Kingston, 114 N. Y. 439; aff'g 39 Hun, 285.

A party who is not affected by the assessment, has no standing to have it adjudged void. Id.

Consanguinity or affinity does not disqualify the assessors. Id.

But a liability to be assessed for improvements does disqualify. Id.

The judgment of the assessors cannot be reviewed, unless it is based upon an erroneous principle. Id.

As to when a railroad using the street need not be taxed, see the case last cited.

An assessment levied for a sewer, under § 72, chap. 336, of 1887, is not an assessment against property, and is therefore void under the statute. Marvin *v.* Town, 56 Hun, 501.

A failure to object on grievance day is not a waiver of such irregularity. Id.

As to what is a construction, extension and enlargement of a sewer, proper to sustain an assessment, see Cleveland *v.* Yonkers, 51 Hun, 644.

An assessment levied for a sewer, which nowhere describes the property, is void under the statute. Hanson *v.* Town, 56 Hun, 648.

The commissioners must assess upon the basis that every separate piece of real estate, within the limits fixed by the common council, derives some special benefit and advantage, and they have no power to modify its determination.   Ellwood *v.* City of Rochester, 122 N. Y. 229.

The commissioners, in laying an assessment, are not confined to property bounded by the extended street.   Matter of City of Amsterdam, 55 Hun, 270.

A reasonable, but not necessarily personal, notice must be given to an affected person.   Id.

An assessment of property, not within the district, for local improvements, is void.   People *ex rel.* Nostrand *v.* Wilson, 119 N. Y. 515.

Mandamus is the proper remedy to compel the assessors to rectify such error.   Id.

§ 36, title 8, chap. 863 of 1873, does not apply to a void and illegal assessment.   Id.

The non-application to the board of assessors, is a jurisdictional defect.   Id.

§ 920 of the Consolidation Act does not require separate assessments for each yearly installment.   People *ex rel.* Martin *v.* Gilon, 60 Hun, 577.

*Certiorari* to review an assessment, before the board of revision has acted thereon, is premature.   Id.

Under the charter of the city of Amsterdam, the commissioners are not limited to an assessment upon land bordering on the extended streets. Matter of Amsterdam, 36 N. Y. St. Rep. 948.

A notice by publication before the final consummation of the assessment, and an opportunity afforded to make objection within the time specified, satisfy the constitutional requirement.   Id.

The valuation by the deputy tax commissioner is a sufficient tax valuation to fix the extent of an assessment for improvements.   Matter of Saint Andrew's Church, 21 N. Y. St. Rep. 80.

The street railroads, which are not benefitted by the repavement, cannot be assessed with the expense of such improvement.   People *ex rel.* Davidson *v.* Gilon; People *ex rel.* James *v.* Same, 126 N. Y. 640.

The determination of such question by the assessors cannot be reviewed by the general term, upon *certiorari*, except for errors of law.   Id.

An abutting owner has no vested right or claim that a railroad company should pave, or bear the expense of paving, any portion of street.   Gilmore *v.* City of Utica, 121 N. Y. 561.

The provision of the charter upon this subject is not mandatory, but leaves the matter discretionary with common council.   Id.

The failure of the city to enforce such liability on the part of the company does not render an assessment for street paving illegal.   Id.

Under the charter of the city of Utica, a railroad company need not be required to bear any part of the expense for paving streets.   Gilmore *v.* Utica, 61 Hun, 618.

A taxpayer cannot challenge errors or mistakes of the officers, when within jurisdiction and discretion, in absence of fraud and bad faith.   Id.

An assessment will not be set aside because of a delegation of powers to

the surveyor, where his action is approved by the common council.   Id.

§ 99 of the charter only requires notice to be published in one official paper on the alternate days mentioned in the statute.   Id.

The legislature can validate an assessment based upon an imperfect petition.   Matter of D. & H. C. Co., 60 Hun, 204.

A defect in the jurisdiction of the common council is immaterial in such case.   Id.

The letting to the highest bidder is not necessarily a proof of fraud.   Id.

Chapter 565 of 1880 does not, by its terms, ratify or confirm any unlawful or other expenditure made for an improvement of Morningside Avenue. Matter of Livingston, 121 N. Y. 94.

That the greatest part of the burden will fall on the city does not prevent an assessed property owner from complaining, if the total sum exceeds the reasonable cost of the improvements.   Id.

The court has statutory authority to review and correct local assessments for this improvement.   Id.

The city's allowance of grossly extravagant or fictitious items entitles a property owner to relief.   Id.

The legislature can compel the local authorities to assess for work done under a fraudulent and abandoned contract.   Matter of Culler, 53 Hun, 534.

The certificate under chap. 557 of 1880 does not preclude the court from granting relief under § 898 of the Consolidation Act.   Id.

A property owner can still question the quantum and value of work certified.   Id.

An assessment for an improvement, invalid only for insufficiency of the petition and lack of signatures may be cured by legislation.   People *ex rel.* Richmond *v.* Wilson; People *ex rel.* Smith *v.* Same, 50 Hun, 606.

A grantee, after the improvement is completed, but before the assessment is made, must protect himself by proper covenants in his deed.   People *ex rel.* Osborne *v.* Gilon, 58 Hun, 610.

The grantee of premises, before the assessment made, is properly assessed for local improvement.   People *ex rel.* Osborne *v.* Gilon, 56 Hun, 641.

The remedy by petition is restricted to a reduction of the assessment, in case of fraud or substantial error, to a fair value of the improvement.   Matter of Feust, 121 N. Y. 299.

As to when a petitioner is entitled to a reduction of the assessment, see Matter of Feust, 55 Hun, 607.

Affirmative action to vacate an irregular and invalid assessment must be brought within one year after the delivery of the roll to the treasurer. Chilcott *v.* Buffalo, 27 N. Y. St. Rep. 222.

A judgment procured by another tax-payer, cancelling his assessment on the same roll, cannot be used as a weapon of attack, but may be employed as one of defense.   Id.

Mandamus will lie to correct a mistake which includes in the assessment roll for a local improvement, land outside of the assessment district.   People *ex rel.* Nostrand *v.* Wilson, 27 N. Y. St. Rep, 279.

An equitable action to vacate will lie before the delivery of the roll to the city treasurer, where the invalidity does not appear on its face. Tifft v. Buffalo, 27 N. Y. St. Rep. 72.

Chapter 307 of 1879 is intended to prevent the doing of an act prejudicial to the public interest. Matter of Eastchester, 53 Hun, 181. This remedy is not precluded because of other remedies. Id.

Where the description in the comptroller's deed does not locate nor identify the land, it is void for uncertainty. Zink v. McManus, 121 N. Y. 259.

An assessment for laying a cross-walk, done without advertising for bids, is illegal. Matter of Rosenbaum, 53 Hun, 478. Such illegality is not cured by chap. 313 of 1874. Id.

A horse railroad company is assessable for paving the street. People ex rel. Davidson v. Gilon, 58 Hun, 76. People ex rel. Janes v. Same, Id. 603.

An omission to assess the company for such purpose renders the assessment erroneous. Id.

Such error may be corrected under chapter 269 of 1880. Id.

That the assessments have been transmitted to the board of correction and revision forms no obstacle to a review. Id.

Where the petition to vacate a void assessment was served in 1880, and the application and proof served in 1890, the delay was not prejudicial to the right to be heard and relieved. Matter of Hazleton, 58 Hun, 112.

In such case, the statute of limitations does not bar a right to relief. Id.

The payment of the assessment, made after proceedings were commenced to vacate, does not affect the right of the applicant to relief. Id.

The requirement of § 9, chap. 531 of 1873 is mandatory. Stebbins v. Kay, 123 N. Y. 31. An omission to certify an assessment, as required by this act, will render the sale void. Id.

Where the sale is for the total of two assessments, it is sufficient for the owner to show either invalid. Id.

In an action to recover moneys paid upon an alleged illegal assessment, the burden is upon the plaintiff to show the invalidity of the assessment. Pooley v. City of Buffalo, 124 N. Y. 206.

The payment of an assessment under a mistake of law will not enable a tax-payer to recover, in case such assessment is invalid for want of jurisdiction. Pooley v. Buffalo, 122 N. Y. 592. A defective resolution of the common council, so far as the legal infirmity appears on its face, will not entitle a tax-payer to maintain such action. Id. The publication of the notice in a newspaper, on the same day, but before the resolution was signed by the mayor, did not render such publication a nullity. Id.

The repayment of moneys received upon an assessment is predicated upon its illegality, want of actual or constructive knowledge by tax-payer, and coercion, either in fact or law, by authorities. Redmond v. Mayor, etc., 125 N. Y. 632.

The assessment, in this case was held valid upon its face, but void by reason of the existence of facts dehors the record. Tripler v. Mayor, etc., 125 N. Y. 617.

Note on " Assessments for Local Improvements."

The repayment of such assessment, where there is no coercion in fact or law, cannot be enforced, unless paid in ignorance of such facts. Id.

The owner of property, who has procured and paid a reduced assessment, cannot recover it back on the ground of its illegality. Hoffman v. Mayor, etc., 58 Hun, 611.

As to when the adjoining property owner can recover back the excess over a legal assessment, see Burchell v. Mayor, etc., 56 Hun, 640.

As to when the city is liable for the collection of a tax out of property not belonging to the assessed person, see Teall v. Syracuse, 120 N. Y. 184; aff'g 44 Hun, 626.

The payment of an assessment, after the granting of an order declaring it illegal on the plaintiff's petition, is voluntary, and cannot be recovered. Smyth v. Mayor, etc., 58 Supr. 357.

Such redemption may be made in improvement certificates to the extent of principal and interest of the assessment at the time of the sale. People ex rel. Ryan v. Bleckwenn, 55 Hun, 611.

The redemption from a sale, under chap. 326 of 1874, may be made in improvement certificates issued under that act. People ex rel. Oakley v. Bleckwenn, 126 N. Y. 310; Oakley v. Same, 37 N. Y. St. Rep. 390; 58 Hun, 609; 59 Id. 618.

In Mayor, etc., v. Curran, 15 Daly, 116, it was held that, where, before the commissioners have reported, a deed is made excepting the land taken by public authority, and the grantee, after the confirmation of the report, conveys with the same reservation, the latter grantee is entitled to the award. The mode of apportioning an award in bulk, where some of the lots have been conveyed, is defined in this case.