(8 Misc. Rep. 178.)

### BRENNAN v. CITY OF BUFFALO.

(Superior Court of Buffalo, Equity Term. April, 1894.)

1. STREET ASSESSMENT—ACTION TO SET ASIDE—LIMITATION.
    Buffalo City Charter, providing that any action or proceeding to test the validity of an assessment shall be commenced within one year after the assessment roll is delivered, does not apply to an action to set aside an assessment as a cloud on title because of illegal, arbitrary, and wrongful acts of the officers levying the assessment.

2. SAME—ASSESSMENT ILLEGAL IN PART.
    Where an assessment is illegal only in part, and the illegal part can be ascertained, the whole assessment will not be vacated, but only the illegal portion.

Action by Caroline K. Brennan against the city of Buffalo to set aside a certificate of sale as a cloud on plaintiff's title. Judgment for plaintiff.

Spencer Clinton, for plaintiff.

Philip A. Laing and Frank C. Laughlin, for defendant.

HATCH, J. Illegal and arbitrary official acts, errors, and corrections furnish the basis for this action, and vividly illustrate the dangers and penalties which attend upon a departure from the known line of public duty and the plain command of authority. The facts are brief and undisputed. The defendant, through constituted authority, determined to pave a part of School street. The expense of the improvement fell short of exceeding $20,000, but, notwithstanding this fact, the common council evidently determined to have the cost levied at a sum exceeding $20,000, in order that the payments for the improvement might be extended five years, in accordance with the provisions of the charter. It therefore directed the assessors to make an assessment of $20,001, as the cost. Before making the assessment, the assessors were furnished by the engineer of the city with the figures, showing that the

entire cost of the improvement only amounted to the sum of $19,-420. Thereupon the assessors proceeded to make up an assessment upon that basis, and apportioned, in a proper manner, the actual cost of the improvement upon the property benefited, including that of plaintiff. When this was accomplished, without authority and in violation of plaintiff's rights', they assessed the further sum of $581, and entered the same in the assessment roll against plaintiff's property. This was done in order that compliance might be had with the order of the council, and payment extended five years. The roll thus made up came to the hands of the comptroller and treasurer, and plaintiff paid to the latter the first installment due thereon, in ignorance of the illegal acts of defendant's officers. The treasurer thereafter, as required by the charter, returned the amount unpaid upon this assessment roll to the comptroller, describing therein the premises as described in the original assessment roll. In the general assessment roll for the next year, prepared by the assessors, they divided plaintiff's property into two parcels, and in this form it came to the comptroller's hands, who thereupon, as commanded by the charter, proceeded to spread the amount returned to him by the treasurer as unpaid of the previous year. In spreading the tax assessed against plaintiff's lands, by mistake, the whole of the amount of the unpaid paving tax was spread upon one of the parcels, leaving the other without any apparent burdens thereon from this source, and only assessed for the general city and lamp tax, amounting in all to $52.82. Plaintiff, having discovered the illegal act of the assessors, refused to pay any part of the paving assessment, but paid the amount of the tax upon the parcel apparently relieved therefrom. Thereupon, and in due course of procedure, the treasurer made up a transcript of taxes unpaid, which included plaintiff's upon one parcel, with added interest and charges, and returned them to the comptroller, who made up a transcript of delinquent taxpayers, as required by law, and delivered the same to the collector for collection, among which was the tax unpaid of plaintiff. While this tax was in the hands of the collector, the comptroller discovered the mistake which had been committed, and thereupon the comptroller changed the original roll and all subsequent evidences of the tax in the treasurer's roll and collector's transcript, by apportioning the tax upon all the land as originally assessed by the assessors in their assessment, with the additions certified by the treasurer. Upon this tax, so corrected, the defendant caused plaintiff's lands to be sold in the usual course, and bid in the same, and now holds the certificates of sale. This constitutes the cloud upon plaintiff's title, which she asks to have set aside.

It is not contended but that the several acts of defendant result in creating a cloud upon the plaintiff's title, and that this action will lie to remove it, provided it be not barred by the statute of limitations, contained in defendant's charter. This statute, so far as essential for the disposition of the present question, reads:

"Any action or proceeding commenced by any person or persons to test the validity or regularity of any tax levied or assessment made, shall be com-

menced within one year from the time of the delivery of the roll in which
said tax or assessment is contained to the treasurer."

While the force of a determination declaring this tax to be a
cloud upon the title, and canceling it, necessarily results in a decla-
ration of its invalidity, either in whole or in part, yet such, in the
statutory sense, is not the primary purpose of the action; its pur-
pose is to remove a cloud on title, by annulling a wrongful and
arbitrary act which the law does not sanction. The allegation of
the complaint is, among other things, that the assessors assessed
all the land upon the basis of a cost of $19,420, in proportion to the
benefits derived thereto, and then, without reference to benefits or
any other consideration except to raise the tax to a given sum,
they wrongfully, unlawfully, and arbitrarily created an apparent
lien and cloud upon plaintiff's land. The gravamen of the com-
plaint is the wrongful and arbitrary acts of the officers. It is
these acts which have produced the injury, and they are the
things which the action seeks to have set aside, which, when done,
causes all acts based thereon to fall. The action is not within the
literal terms of the statute, as its primary purpose is not to test
the tax levied, but to remove a cloud, and this does not rest upon
the levying of the tax, but solely upon the illegal act in arbitrarily
placing a given sum of money against the land, not by way of any
tax or assessment for any purpose, but simply to increase the
amount of the roll. The limitation is upon an action or proceed-
ing to test the validity and regularity of a tax, and, by another pro-
vision of the charter, different owners may unite in the same action,
and, where the invalidity is patent upon the face of the roll, pro-
vision is made for application to the court without action, and this
action or proceeding may be maintained whether the tax be a lien
or a cloud upon land or not. The legislature, having given these
remedies to test the validity and regularity of a tax, intended and
has placed a limit upon their exercise. But it seems clear to my
mind that it did not intend to embrace therein these equitable
actions for relief from illegal, arbitrary, and wrongful acts result-
ing in injury, but has left such actions as they before existed, sub-
ject to the practice prescribed by the Code of Procedure, and gov-
erned by principles of law long established. I therefore regard
this action as well brought.

The facts of the case being admitted, the measure of relief be-
comes a subject of consideration. It clearly appears that the as-
sessors levied and apportioned the actual cost of the improvement
upon all the property based upon benefits resulting thereto, and
that in all respects the provisions of law governing their action
have been complied with, the improvement has been made, and
plaintiff has received the benefits to her land resulting there-
from. The amount of the illegal sum is accurately ascertained,
and, if deducted from the amount of the tax, furnishes complete
relief for all that plaintiff has suffered arising out of the wrongful
and illegal act of the assessors. It is true that the roll, by the
illegal act, had become a roll payable in five years instead of three,
but plaintiff is not shown to be prejudiced on account of this fact.

She is not precluded from paying earlier if she chooses, while the testimony is that this was made for the benefit of the taxpayer, and furnished the occasion for embracing the arbitrary sum. It has been held that where the levying of a tax was without authority, but no injury has resulted therefrom, no cause of action existed (O'Reilley v. City of Kingston, 114 N. Y. 439, 21 N. E. 1004; Moore v. City of Albany, 98 N. Y. 396); and this court has recently held that where the extent of the injury can be easily and accurately determined, and deduction of the amount made, the whole tax will not be vacated and set aside, but only the illegal portion. Kittinger v. City of Buffalo, MS. opinion by White, J., adopted by the general term,[1] following the supreme court in Kinsella v. City of Auburn (Sup.) 7 N. Y. Supp. 317. I think the principle applicable to the facts of this case, and that justice will be accomplished by striking out the arbitrary sum, and permitting the remainder to stand. When the roll came from the assessors to the comptroller, it was assessed upon plaintiff's entire property as one parcel, was so entered by him, and so appeared in the treasurer's hands, and was so returned again by him to the comptroller. Upon the next year's roll, the assessors, for some purpose unexplained, had divided this land into two parcels, but it was still the same land in quantity and ownership, and subject to the same tax. By the provisions of the charter (title 5, § 10), the comptroller was required to spread the aggregate amount of all local assessments and additions returned to him opposite each lot of land subject to such tax. It therefore became his duty to set plaintiff's tax opposite her land. He did not do so, but placed it opposite only a part. This was not an error of judgment. The amounts were known. Everything connected therewith was known. It was simply a mistake in placing it all opposite one lot, instead of opposite both. The tax was a valid tax, with the arbitrary sum removed, and the land was subject to its payment. As thus set down, it passed to the hands of the treasurer. Plaintiff refused to pay, on account of illegality. She did pay the general and lamp tax against the relieved parcel, but such payment in no wise prejudiced her rights in the matter, nor did it mislead her to her prejudice. She was bound to pay that tax, independent of the paving tax. She was in no wise affected by this act. When the comptroller discovered the mistake, he did what he should have done in the beginning,—placed the tax so that it appeared as a lien upon all the land. This involved no more than a clerical correction. It left the tax where it properly belonged, without prejudice to plaintiff or any other person. Charter, tit. 5, § 10; Cooley, Tax'n, 321–323. The case, as thus presented, shows that, while illegal acts and errors have been committed, yet the extent to which plaintiff has suffered is clear, definite, and certain, and can be corrected in such manner that justice for all parties can be attained. Such correction I believe to be within the equitable powers of the court. Judgment is therefore ordered declaring the acts of the assessors in levying the sum

[1] See note at end of case.

necessary to raise the roll above $19,420 null and void; setting aside, vacating, canceling, and annulling the sale of the premises made by the comptroller, and the certificates thereof issued to defendant, as constituting a cloud upon plaintiff's title; also directing that the tax assessed against plaintiff's lands be reduced in the sum of $581, with all interest, additions, and charges assessed or made against plaintiff on account of such sum, together with the costs of this action. Ordered accordingly.

### NOTE.

The opinion of White, J., at a special term of the superior court of Buffalo, in the case of Mary J. Kittinger and Ellen R. Wing v. The City of Buffalo, The Barber Asphalt Paving Company, and others, is as follows:

George Wing and George Clinton, for plaintiffs.
Frank R. Perkins, for defendants.

WHITE, J. This action is prosecuted for the purpose of having two certain assessment rolls made by the assessors of the city of Buffalo adjudged null and void, and restraining the collection of assessments against the lands of the plaintiffs contained in said rolls. The park system of Buffalo includes certain lands known as the "Circle," and certain approaches thereto, one of which is Porter avenue. The plaintiffs, respectively, own lands adjacent to the Circle. The Circle and Porter avenue, together with all the other portions of the park system and approaches, are under the exclusive jurisdiction, management, and control of a board of park commissioners, and the construction of roadways within said parks and approaches, and the keeping of them in repair, are exclusively intrusted by the city to said board of park commissioners; while the duty of making improvements in and repairs upon all other public streets and thoroughfares, including Wadsworth and Pennsylvania streets, is intrusted by the city exclusively to its common council. In 1889, proceedings were instituted by the board of park commissioners in terms to pave the Circle. Those proceedings were initiated and conducted in all respects according to law, until the contract for doing the work was entered into, which contract contained provisions for doing certain work in Porter avenue and Pennsylvania street as a part of and in connection with the pavement within the line of the Circle, but which was not mentioned or specified in terms in any of the proceedings preliminary to the making of the contract, except that it was shown in the plans and specifications upon which bids for the work and the contracts were based. The work shown on the plans and specifications to be done in Porter avenue and Pennsylvania street was undoubtedly in excess of that mentioned and specified in the proceedings preliminary thereto. One-half the expense of paving the Circle is payable out of the general fund, and the other half by local assessment upon property adjacent thereto; and repairs thereon, not exceeding $200 in cost, are also payable out of the general fund. The board of park commissioners contracted with the defendant the Barber Asphalt Paving Company to do the work embraced in the plans and specifications, for the sum of $10,425, one-half of which, to wit, $5,212.50, was assessed by the rolls in question against property adjacent to the Circle and lands deemed benefited by said work. The rate of taxation against the plaintiffs and other owners of lands similarly situated and deemed benefited by the work is the same. The claim of the plaintiffs is that the contract made by the board of park commissioners, in so far as it embraced work outside the line of the Circle, was without authority of law, and that, therefore, the contract and all subsequent proceedings, including the making of the rolls in question, were void. It is true that, while the work embraced in the contract for and done in Porter avenue was within the jurisdiction of the board of park commissioners, it was neither specified nor provided for in any of the proceedings preliminary to the plans and specifications which were made a part