CECILIA B. O'REILLEY, Appellant, v. THE CITY OF KINGSTON, Respondent.

In an action to set aside, as illegal and void, an assessment upon lands of plaintiff for paving a street in the city of K., it appeared that by an ordinance of the common council, passed at the same time with the one authorizing the improvement, the grade of the street was declared to be "changed and amended." The city charter (Chap. 150, Laws of 1872, as amended by chap. 429, Laws of 1875), prohibits a change in the grade of a street except upon petition of a majority of the owners of the lineal feet frontage on that part of the street to be graded. No such petition was presented. There was no record of any previously established grade of the street. It appeared that some attempt had been made to establish a grade and to conform the street to it; but that the surface of the street was very irregular, there being low places in which the water would

stand, and one side in some places lower than the other side, and the grade was not uniform. When the street was paved it was filled in places. Under the contract for the work the change in the actual surface of the street did not increase the expense, no charge being made for the filling, and the assessment was simply for the paving. The trial court was requested to find, as a fact, that the change of grade did not increase the cost or the assessment on plaintiff's lot; the request was declined as " immaterial." *Held,* error; that it devolved upon plaintiff to show that she was damaged by the assessment made; also, that a material change in the grade had been effected by the ordinance, the expense of which entered into the assessment; that the conforming of the road-bed necessarily required some grading, but did not necessarily effect a change of the established grade; and that the evidence showed there was no change which increased plaintiff's assessment.

The apportionment it appeared was made in proportion to the frontage of each lot upon the street; some of the lots were vacant, others occupied by valuable buildings. *Held,* that, as under the charter, it was the duty of the assessors to determine the benefits derived by the owners, in thus determining they acted judicially, and their judgment as to the amount of benefit derived could not be reviewed here unless they acted upon an erroneous principle in making the assessment; that the assessment on each lot, in accordance with the number of feet front, was not necessarily an erroneous principle, if in the judgment of the assessors the owners were benefited in that proportion.

There was a street railway whose tracks were, before the improvement, in, but along the side of the street. The railroad company agreed with the city to and did remove its tracks to the centre and paved the street between its rails. The charter provides that no part of the expense of such an improvement shall be assessed on lands " not bordering on or touching the street." It was objected that the railroad company should have been assessed. *Held,* untenable; that the land occupied by it did not border on or touch the street within the meaning of the charter, it being simply a part thereof.

The provision of the Code of Civil Procedure (§ 46), providing that a judge shall not sit as such or take any part in the decision of a cause or matter if he is related to any party to the controversy within the sixth degree, refers to a judge, justice or other person holding a court *eo nomine;* it has no application to assessors.

Said charter provides that the assessment shall be upon the " owners or occupants and upon the land deemed to be benefited;" also, that if an assessor is interested in property liable to be affected by such an assessment, the common council may appoint a freeholder to act in his place. It appeared that the son of one of the assessors owned one of the lots assessed. Upon it is a hotel and the assessor lived there. It did not appear that the son lived on the premises, or who ran the hotel. It was claimed that the assessment was void because said assessor was interested.

*Held,* untenable; that the evidence failed to show that the assessor was an " occupant" within the meaning of the charter, or that he was interested in the property assessed.

The latter alleged defect was not set forth in the complaint.   It was proved by evidence *de hors* the record, under objection by defendant's counsel. *Held,* that the evidence was improperly received; and that the question, therefore, was not properly presented on appeal.

Reported below, 39 Hun, 285.

(Argued April 24, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made January 26, 1886, which reversed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

The nature of the action and the material facts are stated in the opinion.

*John E. Van Etten* for appellant.   The trial court was right in judging the assessment void, because the paving for which the assessment was made involved a change of the established grade of the avenue paved without any petition or consent of adjacent owners.   (Laws of 1805, chap. 87; Laws of 1854, chap. 184, §§ 33, 34, 36; Laws of 1861, chap. 145, title 5; *In re Morris,* 2 Hill, 14; *In re Phillips,* 60 N. Y. 21, 22; *In re Walter,* 75 id. 324; *In re Banta,* 60 id. 165; *Littlefield* v. *Vernon,* 41 id. 123, 136; 49 id. 587; *In re John and Cherry Streets,* 19 Wend. 675; *Genet* v. *City of Brooklyn,* 69 N. Y. 506, 516; *In re Second Ave. M. E. Church,* 66 id. 395; *Merritt* v. *Village of Port Chester,* 71 id. 309.)   The assessment is void because the assessors in making it went upon a rule wrong in law.   Instead of apportioning the tax according to the benefit received, they did it according to an arbitrary fixed rule of $1.45 per lineal foot front on the avenue, without regard to depth, value or any other consideration. (*People* v. *J. C. Court,* 55 N. Y. 604, 605, 606, 607; *Kennedy* v. *City of Troy,* 77 id. 493, 494; 12 Hun, 182; *Clark* v. *Village of Dunkirk,* 75 N. Y 612; *Stewart* v. *Palmer,* 74

id. 183; *People* v. *Mayor, etc.,* 63 id. 291, 300; *In re W. and A. Streets,* 19 Wend. 678, 690; *In re Roberts,* 81 id. 62.) The horse railroad company was liable to assessment and taxation for the bed of its road as real estate. (2 R. S. [7th ed.] 981; Laws of 1881, chap. 293; *People ex rel. F., etc., R. R. Co.* v. *Cassidy,* 46 N. Y. 46; *Smith* v. *Mayor, etc.,* 68 id. 552, 555.) The road when built is private property, and is not and does not form a part of the street for the use of the public at large. (*B. C. R. R. Co.* v. *B. C. R. R. Co.,* 32 Barb. 353, 361, 372.) The entire building of the road devolved upon the railroad company exclusively. (*Davis* v. *Mayor, etc.,* 14 N. Y. 506.) The duty to keep the roadway of the streets in repair, which devolved upon the railroad company when the company elected to take the benefit of the license granted it, was a duty, the benefit of which was not confined to the municipality only, but it also enured to the public and those who might otherwise be charged with the expenses of the work, to wit, especially adjacent owners. (*City of Brooklyn* v. *B. C. R. R. Co.,* 47 N. Y. 476, 485; *Walker* v. *Caywood,* 31 id. 51; *Eno* v. *Mayor, etc.,* 68 id. 215, 219; *B. C. R. R. Co.* v. *B. C. R. R. Co.,* 32 Barb. 358; *State of N. Y.* v. *Mayor, etc.,* 3 Duer, 119; *Riddle* v. *Proprietors of Locks,* 7 Mass. 169, 184, 185.) The common council had no right to direct or the assessors to include in the assessment upon adjoining owners any part of the expense incurred by paving between, over and under the projecting part of the ties of the railroad. (*Elmendorf* v. *City of Albany,* 17 Hun, 81.) The assessment is also void for the reason that one of the assessors making the assessment was disqualified from acting, by reason of his occupancy of property on the line of the street subject to assessment, and actually assessed, and also of consanguinity to the owner thereof. (*Regina* v. *C. Com.,* 1 Ad. & E. 468; *Regina* v. *A. C. Co.,* 14 id. 854, 865; *Regina* v. *Justices of Helfordshire,* 6 id. 753, 756.)

*William Lounsbery* for respondent. It was not sufficient to show that the street had been graded by the former village

of Kingston. It was necessary to show both an establishment of grade and a working to it, so as to make an assessment, and that the owner had been subjected to costs by reason of a former establishment of a grade. (*In re Brady*, 85 N. Y. 268, 270.) The question of increase of cost by the change of grade is not immaterial. (*In re M. L. Ins. Co.*, 89 N. Y. 530.) If an assessment is void because it is made by lineal feet, it is no cloud upon the title. (*Stewart* v. *Palmer*, 74 N. Y. 183; *Horn* v. *Town of New Lots*, 83 id. 100–104.) Whether the assessment was equitably apportioned rested in the judgment of the assessors alone, and the court cannot review that determination. (*In re Eager*, 46 N. Y. 100; *In re Cruger*, 84 id. 619.) If it was proper for the court to determine by evidence the question whether the assessment was equitably made, then it was error to exclude the evidence upon that question offered by the defendant on the examination of one of the assessors who made the assessment. (*Kennedy* v. *City of Troy*, 77 N. Y. 493.) The agreement between the railroad company and the city upon a division of the pavement was apparently equitable, based upon occupancy, and lawful. (*In re Appleby*, 26 Hun, 427; *Elmendorf* v. *City of Albany*, 17 id. 81; *Kennedy* v. *City of Troy*, 77 N. Y. 493; *Western R. R. Co.* v. *Nolan*, 48 id. 513.) The assessors were not judicial officers and disqualified by the Code, section 44. (2 R. S. 275, § 2; *People* v. *Wheeler*, 21 N. Y. 82; *Foot* v. *Styles*, 57 id. 399.) The assessment does not appear to be tainted with fraud. The errors alleged are technical and not substantial, and are not of a character to avoid it. *In re Brady*, 85 N. Y. 268; *In re Merriam*, 84 id. 596; *In re Cruger*, Id. 619.)

HAIGHT, J. This action was brought to set aside and adjudge void an assessment made upon lands of the plaintiff, for the paving of Union avenue in the city of Kingston. It is claimed in the first place that the assessment is void because of the change of the grade of the street without the consent of the adjoining owners, and that the expense of such change was

incorporated in the assessment. The ordinance was passed on the 23d day of May, 1879, and is entitled "an ordinance for amending the grade of Union avenue from St. James street to Greenkill avenue." Section 1 of the ordinance provides that "the grade of that portion of Union avenue in said city, lying between the southerly line of St. James street and the northerly line of Greenkill avenue, is hereby changed and amended, and shall be as follows." It then proceeds with the specific description of the grade as established. On the same day another ordinance was passed providing for the pavement of Union avenue, lying between the easterly line of Holmes street and the southerly line of Albany avenue, excepting that portion of the roadway occupied by the tracks of the Kingston and Rondout Horse Railroad Company. That ordinance provided for the pavement of the street and that it should be "adjusted and regulated to conform to the proper grades;" that twenty-five per centum of the cost should be paid by general tax upon the city, and that seventy-five per centum of such cost should be defrayed by special assessment upon such portions of the real estate of the city bordering on or touching the avenue, and against the owners thereof, as the assessors of the city shall deem more immediately benefited by such improvement. The charter of the defendant prohibited the change of the grade of a street which had been established, except upon the petition of the owners of a majority of the lineal feet frontage on the part of the street to be graded, etc. No petition of a majority of the owners of the lands fronting upon the avenue was presented to the common council for a change of the grade, and, consequently, the ordinance was without authority, if a material change was effected by it. The trial court was requested to find as a fact that the change of the grade of the new pavement did not increase the cost of the work, and that the amount of the assessment upon the plaintiff's lot was not increased by any change made in the grade. The request was refused in these words: "Declined, and as I think immaterial."

The General Term held that this request should have been

found, and that it was material. The General Term had the power to review the facts and determine whether a finding was against the weight of evidence or whether a request to find was supported by a preponderance of evidence and should have been found. As we have seen, the trial court did not base its refusal to find the request upon the ground that it was not supported by the evidence, but chiefly upon the ground that it was deemed immaterial. In determining these questions it becomes important to ascertain whether there was any material change in the grade made by the ordinance complained of. In the first place, there is no record of any previously established grade of the street, yet it appears, from various resolutions of the directors of the village of Kingston, that some attempt had been made to establish a grade, and to grade the street so as to conform to that established; but in no place are we given a description of the grade so established, only as it appears from the testimony of the witnesses to the effect that the street was worked to conform to the stakes that were set by the surveyor, and that the summit of the street was at a different point from that established by the ordinance of 1879; that when the street was paved in some places it was filled in so as to raise the surface of the street five or six inches, and in one place about eighteen inches. On the other hand, there is abundant evidence, that is not contradicted, showing that the surface of the street as it existed prior to the pavement was very irregular; that the side of the street in some places was lower than the other side; that there were low places in which the water would stand, and that the grade was not uniform. Under this evidence, even if we concede that there was a change in the grade from that previously established, we are left powerless to determine as to the particulars or the extent of the change made. If a previous grade had been established, we must assume that it was intended to be comparatively uniform so far as the surface was concerned, and that it did not provide for holes or low places in which the water would stand, or that one side of the grade should be lower on one side of the street than on the other.

If there was no material change in the grade, or if the changes made were of a trivial and unimportant character it might well follow that the cost of the pavement was not increased. It devolved upon the plaintiff to show that she was damaged by the assessment made, and in order to invalidate the assessment she must show that a material change in the grade had been effected by the ordinance; that the ordinance was void and that the expenses of such change entered into the assessment.

Upon the question of the expenses of the grading, and as to whether it entered into the assessment, we have, first, the testimony of the engineer of the city to the effect that no change in the actual surface of the street, which was made by the paving, made any additional expense which increased the amount of the final estimate. We then have the agreement with the contractors in which they undertake to grade, regulate and pave the street, and to receive therefor "the following prices as full compensation for furnishing all the materials and labor which may be required in the prosecution of the whole of the work to be done under this agreement, and in all respects performing and completing the same, to wit: For the Telford pavement, per square yard, the sum of 77 cents, including all excavations therefor and labor and materials used or employed thereon; for cobblestone pavement in gutters, per square yard, the sum of 37½ cents, including all excavations therefor and labor and materials used or employed thereon; for regulating and adjusting the curb and gutter, per lineal foot, the sum of 3 cents; for regulating and relaying sidewalks, per lineal foot, the sum of 3 cents." No charge appears to have been made, or agreed to be paid, for any filling of any irregular or uneven surface of the road-bed. We next have the resolution of the council passed after the submission of the final estimate of the cost of paving the avenue, in which the assessors are directed to assess seventy-five per cent of the expenses of *such paving* as determined by such final estimate upon the real estate bordering on or touching Union avenue as the assessors shall deem to be more immediately benefited by such improvement.

Union avenue, before the pavement, was occupied by a street railroad which ran along the side of the street near the gutter. It had been occupied by a plank-road which, some years before, had been taken up and a stone-road substituted in the place of it. When the street was repaved the street railroad company's track, under an arrangement made between the company and the city, was removed to and constructed in the center of the street. The paving of the street made it necessary to remove the stone-road previously existing, and to conform the surface of the road-bed for the new pavement. The conforming of the road-bed, of necessity, required some grading, but did not necessarily effect a change of the established grade.

Under the evidence to which we have called attention, it appears to us that the conclusion was warranted that there was no change of the grade which increased the cost of the pavement, and that the assessment upon plaintiffs' lot was, consequently, not increased by any such change, and that the General Term properly held that such facts should have been found by the trial court. (*James* v. *Cowing*, 82 N. Y. 449.)

If there was no cost of grading the street to conform to a changed grade embraced in the assessment made upon the plaintiff's premises, then the plaintiff would not be injured by reason of the assessment, and would have no standing in court to have it adjudged void; consequently, the facts requested to be found by the trial court were material.

Objection is made to the assessment upon the ground that it was apportioned among the owners of the lots fronting upon the avenue in proportion to the frontage of each lot upon the street, some of the lots being vacant and others occupied by valuable buildings. The charter provides that " the common council shall have power to cause any street, alley, lane, highway or public ground or any part or parts thereof in said city to be graded, paved or repaired   *   *   *   and to determine by resolution what part or portion, if any, not exceeding twenty-five per centum of the expenses of such grading, paving etc.,   *   *   *   shall be paid by a general tax upon the city, and such part or portion of such expenses shall thereupon become

a charge upon said city and shall be added to and raised with the next general assessment and tax for city purposes; and what part or portion of such expense shall be defrayed by special assessment upon such portions of the real estate in said city and against the owners thereof as the assessors of said city shall deem more immediately benefited by such improvement. No part of the expense of grading or paving a street shall be assessed upon any lands not bordering on or touching said street." (Laws of 1872, chap. 150, § 98.)

It will be observed that the land to be assessed must be that bordering on or touching the street, and that it was the duty of the assessors to determine the benefits derived by the owners of such land as does border on or touch the street improved. In thus determining the benefits the assessors act judicially. They had an opportunity to examine the premises personally, and were thus possessed of information which cannot be brought before a court on review, consequently their judgment upon the question, as to the amount of benefit derived, cannot be here reviewed, unless they acted upon an erroneous principle in making the assessment. It appears that they reached the conclusion that the tax should be apportioned among the owners of the real estate bordering upon the street according to the number of feet front owned by each individual. This is not necessarily an erroneous principle, if it was their judgment that each owner was benefited in that proportion. On the other hand, it may be the most just and equitable of any that could be adopted. (*In the Matter of Cruger*, 84 N. Y. 619; *In the Matter of Eager*, 46 id. 100, 109.) Further objection is made to the assessment upon the ground that the street railroad company was not assessed by the special assessment ordered by the common council. It appears that the company had a grant from the city to construct and operate a street railroad through Union avenue, and before the paving it entered into an agreement with the city to remove its tracks to the center of the street, and to pave the street between its rails with block stone, and that this was done. It does not expressly appear that the pavement

between the rails by the street railroad was to be in lieu of an assessment, and yet such was doubtless the understanding of the parties. But it appears to us that the objection is answered by the statute and resolution of the council directing the assessment. As we have seen, the statute provides that no part of the expense of grading or paving the street shall be assessed upon any lands·not bordering on or touching the street; the resolution of the council is that the expenses of the pavement "be defrayed by a special assessment upon the real estate in said city bordering on or touching said Union avenue, as the assessors of said city shall deem to be more immediately benefited by such improvement."

The fact that no assessment was made upon the street railroad company is evidence that the assessors did not deem the company "immediately benefited." Under the statute and resolution, it is the land bordering on or touching the street that is to be assessed. The land occupied by the street railroad company is a part of the street; it does not border on the street nor does it touch the street, for, being a part of the street, it is the thing touched and not which does the touching. A street cannot well touch itself, for touching ordinarily implies different bodies or parcels brought in contact with each other.

It is now contended that the assessment is void for the reason that one of the assessors was interested in one of the lots assessed ; that he was the father of the owner to whom it was assessed, and lived thereon. No such defect was alleged in the complaint. The General Term, however, was of the opinion that the question being jurisdictional, it was properly before the court for consideration. But is this so? The record of the assessment disclosed no such defect. It appears to have been made by the city assessors, and it does not appear that either had any interest in the property assessed, or was related to any of the owners thereof. Had such interest or relationship appeared, the proper mode of review would have been by *certiorari*. It is the fact that such interest or relationship does not appear upon the record, that a court of equity

is given jurisdiction. The interests or relationship of the assessor can only be determined by extrinsic evidence *de hors the record.* Suppose, therefore, that this defect was the only one upon which the plaintiff relied to annul the roll, and that the complaint alleged that the roll was illegal without specifying in what the illegality consisted. Can there be any doubt but that the complaint would be demurrable? There would be nothing upon which the defendant could take issue, or that would apprise it of the claim it was to meet. It appears to us that the question is fully answered by the case of *Knapp* v. *City of Brooklyn* (97 N. Y. 520–523). It may be urged that evidence of the relationship of the assessor, etc., was received upon the trial. Very true, but it was admitted under the objection of the defendant, and the city ought not now to be held responsible for the evidence so improperly received under its objection. But, assuming that the question is properly before this court for consideration, we are of the opinion that no cause is shown for equitable relief. So far as the question of consanguinity or affinity is concerned, it is sufficient to say that the provisions of section 46 of the Code of Civil Procedure, which provides that a judge shall not sit as such or take any part in the decision of a cause or matter if he is related by consanguinity or affinity to any party to the controversy within the sixth degree, refer to judges or justices or other persons holding a court *eo nomine*, and have no application to assessors. Were it otherwise, many of the small villages would be unable to find persons qualified to serve as assessors. (*Foot* v. *Stiles et al.*, 57 N. Y. 399–406; *People* v. *Wheeler*, 21 id. 82–86.)

The question of interest requires more consideration. The defendant's charter provides that "if the assessors or any or either of them be interested in property liable to be affected by such assessment, or from any cause incapable of acting, the common council may appoint in place of such assessor, that is disqualified, a disinterested freeholder of said city, residing therein, to perform the duties of such assessor under this section as to such assessment." (Laws

1872, chap. 150, § 98.) "May" should, doubtless, be read as *must ;* and, under the charter, the duty devolved upon the common council to appoint a disinterested freeholder in case one of the assessors was interested in the property to be affected by the assessment. The question is, therefore, whether assessor Osterhoudt was interested in the lot on which he lived and which was assessed to his son William, who was the owner thereof. It is claimed that Osterhoudt, as occupant, was liable to be assessed, and was consequently interested. The provisions of section 98 of the charter upon this point are not in entire harmony. The first clause provides that the "expense shall be defrayed by special assessment upon such portions of the real estate in said city *and against the owners* thereof as the assessors of said city shall deem more immediately benefited," etc. Under this provision the assessment is to be made against the "owners," and the occupants are not mentioned. But further on the assessors are required to make a "certificate of such special assessment, entering therein *the names of owners or occupants* of the land assessed," etc. And, again, it provides that "they shall make a just and equitable assessment of the amount fixed by the common council against the said *owners or occupants* and upon the lands deemed to be benefited," etc. We have not thought it necessary to construe these provisions and determine whether an occupant can be personally bound or made liable to pay a special tax of this nature, for we are of the opinion that the question should be disposed of on another ground. It appears from the evidence that Osterhoudt lives in the house on the lot assessed to his son William, and that William is the son; that the house is a hotel, and was run as such at the time of the assessment. It does not appear whether William, the owner, lived on the premises or who ran the hotel. If William lived in and conducted the hotel, he was both owner and occupant, and no other person could be properly assessed. If the hotel was run by some other person and Osterhoudt lived with him as a guest, he would not be an occupant, within the meaning of the statute, liable to be assessed. Showing that Osterhoudt lived upon

the premises was not sufficient to establish that he was interested. To do that, it must appear that he was an occupant, within the meaning of the statute, and liable to be assessed for the improvement as such.

It follows that the exceptions taken to the finding of fact and conclusion of law upon this subject were well taken, and that the order of the General Term should be affirmed and final judgment ordered for the defendant on the stipulation, with costs. So ordered.

All concur, except PARKER, J., not voting; BRADLEY J., concurring in result.

Order affirmed and judgment accordingly.