(72 App. Div. 260.)

### CITY OF ITHACA v. BABCOCK.

(Supreme Court, Appellate Division, Third Department. May 7, 1902.)

1. MUNICIPAL CORPORATIONS—SEWER ASSESSMENTS—ENFORCEMENT BY ACTION—STATUTORY AUTHORITY.

Laws 1895, c. 162, § 12, provides that assessments for construction of a sewer system for the city of Ithaca shall be made as prescribed by title 6 of Ithaca city charter. Laws 1888, c. 212 (Ithaca City Charter) tit. 6, § 9, provides that such assessments shall be to the owners or occupants of the abutting properties by name, and that the collection thereof may be enforced as provided by title 5, § 5, which provides that such assessments "may be sued for and recovered by the city against any person liable therefor." *Held*, that in enforcing a sewer assessment made against one as an abutting property owner the city was not confined to recover against the property, but might maintain a personal action therefor against such owner.

2. SAME—ACTION—DEFENSE—BURDEN OF SHOWING INVALIDITY OF ASSESSMENT.

In an action by a city to recover a sewer assessment duly assessed by the council against a property owner, wherein defendant claimed that the assessment had been made in an improper manner, the burden of showing that the assessment was wrongful was on defendant.

3. SAME—COLLATERAL ATTACK—FORMAL ERRORS—UNEQUAL ASSESSMENT.

Such attack was collateral, and could only be sustained by showing that the assessment was absolutely void, and defendant could not prevail by showing formal errors and irregularities, or that he was assessed with more than his proportion; the remedy in such case being by certiorari.

4. SAME — DETERMINATION OF BENEFITS — AUTHORITY OF COUNCIL — FRONT-FOOTAGE RULE—UNEQUAL ASSESSMENT—COLLATERAL ATTACK.

Laws 1895, c. 162, § 12, relating to a sewer system for the city of Ithaca, provides for the assessment of the properties especially benefited thereby in the manner prescribed by the city charter. Laws 1888, c. 212 (Ithaca City Charter) tit. 6, § 4, provides that such assessment shall be upon the owners or occupants of the premises benefited, as prescribed by section 9, which provides that the assessments shall be to such owners, etc., by name. The reassessment act (Laws 1900, c. 197) fixes the area of the property and the amount to be assessed by the council, but "to the extent only that the abutting proprietors have been benefited thereby." *Held*, that the determination of the benefits derived by the several proprietors was left to the judicial discretion of the council, in the exercise of which it was competent for them to adopt the "front-footage" rule, and any inequality resulting from such rule was an error of judgment, not available as a defense in an action to recover such assessment.

Appeal from special term, Tompkins county.

Action by the city of Ithaca against George W. Babcock. From a judgment in favor of plaintiff (72 N. Y. Supp. 519), defendant appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

David M. Dean (William N. Noble, of counsel), for appellant.
George S. Tarbell (Jared T. Newman, of counsel), for respondent.

KELLOGG, J. The plaintiff brings this action in the supreme court to recover a judgment for a local assessment for sewer purposes. The defendant contends that the action cannot be maintained against him personally; that, in any event, the assessment can be

enforced only against the premises described in the assessment roll. He also contends that the assessment is void, as having been made upon a wrong principle. The authority for the manner of making the assessment (section 12, c. 162, Laws 1895) declares that it shall be made "as prescribed by title six of the charter of the city of Ithaca" (chapter 212, Laws 1888). Title 6 (section 9) provides "such expense to be assessed to such owners or occupants by name," and collection thereof may be enforced as provided by section 5 of title 5, which says, "Such tax and interest may be sued for and recovered by the city against any person liable therefor." Here the assessment was to defendant as owner. I think this disposes fully of the claim that an action will not lie.

The other contention—that the assessment is void because made upon a vicious principle—presents more serious difficulties. The principle adopted was what is known as the "foot-frontage plan." A uniform assessment of 36 cents was made upon each lineal foot of lot frontage upon the street through which the sewer was laid. This might or might not be a wrong principle of assessment. It is not to be presumed that it was wrong, for it might have been right; and the burden of establishing that it was wrong in this particular case was upon the defendant. This is not a certiorari to review the proceedings of the sewer commissioners or the common council. The defendant had his opportunity to be heard before the body authorized to make the assessment and to review those proceedings in the usual way by certiorari. He has chosen to allow the judicial determination of the common council to stand and to rest his defense upon the claim that the assessment is absolutely void. The plaintiff sues upon that judgment, and the rights of defendant are none other than those recognized in a court of equity where a party brings an action to set aside an assessment of this nature as a cloud upon his title not apparent upon the face of the assessment. In both cases the burden of proving that the assessment is void is upon the party asserting it. In both cases the attack upon the correctness of the assessment is a collateral one. The rule of law "forbids a party to dispute by a collateral attack the correctness of an assessment where mere irregularities or errors of a formal nature have been committed, or where the ground of complaint is in the excess of the amount of the assessment over his due proportion. The remedy in such a case is by certiorari to review the proceedings objected to." To maintain the attack, "the facts should show that the municipal officers had transgressed their jurisdiction, and that in making the assessment they had failed to comply with, and had in fact disregarded, the ordinance or resolution from which they derived their sole authority to act. * * * If the municipal authorities have acted within their jurisdiction in making the assessment complained of, that the evidence makes it appear to be disproportionate does not prove necessarily that an erroneous rule was adopted." Monroe Co. v. City of Rochester, 154 N. Y. 570, 49 N. E. 139. We have here given us a plain and reasonable guide in the matter of assessments for local improvements where the assessment is to be apportioned by assessors upon property in proportion to the benefits to be derived from such improvement, and where such assessments are at-

tacked collaterally, as in the case before us.   If it can be plainly seen in this case from the extrinsic proof that the principle of foot frontage which was adopted was unauthorized, then the error is fatal, the assessment is absolutely void, and the defense to the action is established.   If, on the other hand, the common council (the assessors) acted within the scope of their authority in adopting this uniform rule, then, so far as this action is concerned, there is no defense established, no matter how apparently inequitable the assessment may be in isolated cases, for such disproportionate assessments cannot be remedied by collateral attack.   The assessment must stand or fall as a whole.

The authority for the construction of this local improvement is contained in an act of the legislature entitled "An act to provide for the construction and maintenance of a system of sewerage in the city of Ithaca."   Chapter 162, Laws 1895.   Section 12 of that act provides:

"Whenever it shall appear to the commissioners that property in localities through which such system of sewers * * * are constructed is especially benefited thereby, they may report such fact to the common council, who may provide for assessments on such property in the manner prescribed by title six of the charter of the city of Ithaca."

Among the various provisions of title 6 of the charter of the city of Ithaca (chapter 212, Laws 1888), relating to assessments for local improvements, including sewers, we find the following in section 4 of that title:

"Such assessments to be made upon the owners or occupants of the premises benefited thereby in the manner prescribed for making assessments in section nine of this title."

Section 9, here referred to, has the following provision as to the manner of assessment:

"Such expense to be assessed to such owners or occupants, by name when known, by said common council, and when unknown to the unknown owners of such lands and premises, describing the same."

Then follows a provision for public notice, a day to hear grievances, etc., and, upon confirmation, the method for collection of the assessment is prescribed.   In neither of these sections do we find any particular rule provided to govern such assessments.   Section 5 of this title of the charter refers to the taking of private property for such local improvements, and in such cases provides:

"They shall at the same time assess and apportion the said damages and expenses of such improvements on the real-estate benefited thereby as nearly as may be in proportion to the benefits resulting therefrom."

This is, however, a special provision, applicable where private property is taken for a street, etc., and the adjacent property and the remaining property of the owner is thereby enhanced in value.   In such case the whole appraised enhanced value, to the extent of the cost of the improvement, may be assessed against such property.   The language of the act authorizing this improvement (section 12, c. 162, Laws 1895) is not so definite.   "Whenever it shall appear to the commissioners that property in localities through which such system of sewers * * * are constructed is especially benefited thereby," the common council may provide for assessments on such property. The reassessment act (chapter 197, Laws 1900) determined the area

of property to be assessed, and fixed the amount to be assessed, and "to the extent only that the abutting properties have been benefited thereby" is the common council limited in apportioning the aggregate sum to be raised. No particular rule of assessment is here laid down. Whether it should be upon a property valuation, by the foot-frontage rule, or whether the common council should, as to each particular piece of abutting property, determine, without any uniform rule, the extent benefited thereby, and on such basis apportion the assessment, is left undetermined. The common council, as before stated, had no discretion in determining the area for assessment. The legislature determined that, but left it to the common council to determine whether any of the property in this area was not benefited, and the extent to which each parcel was benefited. The wording of the act, by fair construction, does so imply. "To the extent only that the abutting properties have been benefited thereby" means, I think, to leave it to the common council to say, as to any particular piece, that it derived no benefit from the improvement. If I am right in construing the meaning of this clause, then the fatal error pointed out in the Ellwood Case, 122 N. Y. 229, 25 N. E. 238, is not found here, even though it should appear that the council had exempted particular lots because not benefited. In the Ellwood Case the common council, in whom solely the authority was vested, determined that all property in a certain area had derived special benefits. Thereafter the commissioners so far revised the judgment of the common council as, in effect, to contract the limits of the area of special benefits, and the court of appeals held the assessment void as imposed by the commissioners without jurisdiction. The common council of Ithaca, after the passage of the act of 1900, had before them the resolution of the sewer commissioners of April, 1900, and the assessment roll, upon which was every lot in the prescribed area, without exception. It had also the maps showing the course of the sewers through the area of special benefits and all of the abutting properties. What other information the common council had does not appear. If other information to form a correct judgment was needful, it must be presumed that it was present, for nothing to the contrary is shown. In July, 1900, the common council passed resolutions, which, in effect, created the apportionment and made the assessment complained of. This is the form of such assessment:

"Be it resolved, that the said property or properties be and they hereby are assessed the several amounts set opposite the respective descriptions of the same in the assessment roll now before the council marked 'Sewer Assessment, 1900, City of Ithaca,' and that said assessment roll be ratified and adopted by the council as the assessment for especial benefits accruing to said property by reason of the construction of said system of sewers."

And thereupon it caused notice to be published, fixing August 1, 1900, to hear complaints, etc.; and on August 1st it held the meeting appointed, and thereat passed a resolution confirming the assessment, which resolution specifically set forth the properties and persons assessed, and the sum to each, and embraced every piece of property in the entire area to be assessed as fixed by the act of 1900. Each piece of property, without exception, was apparently assessed. This is

shown by the roll adopted, and there is no proof in the record before us to the contrary. What was done by the sewer commissioners or the common council prior to 1900 in relation to reports or assessments is neither relevant nor material. This was an assessment under the act of 1900. What moved the common council to adopt the uniform rule of foot frontage is wholly unknown. Whether the report of the commissioners had weight, or whether the members of the council relied upon their own judgment or were influenced by facts not in the record, does not appear. Not one of the members of that body was a witness at the trial. What influenced the sewer commissioners to make the report to the council does not appear, but that cannot be taken as the sole grounds of the judgment of the council. If, on this trial, the common council had been questioned as to whether they had taken into consideration the value of the buildings and other improvements upon the various properties, and had replied that they had but concluded that the benefits were not affected by such buildings or improvements, this would, in a collateral attack like this, have been conclusive. It was so held in Hoffeld v. City of Buffalo, 130 N. Y. 387, 29 N. E. 747. It might be shown to have been an error of judgment, available, perhaps, to the party aggrieved on review of the proceedings by appeal or certiorari, but not available collaterally. Every proper presumption must prevail in support of a judicial determination. If needful to support this judgment of the common council, we must presume that all matters were considered,—the values of buildings and improvements, the uses of the property in the entire area, and every fact and factor which should have been considered to make a conclusive judgment,—for there is no evidence that all those matters were not considered by the council. I think it was within the judicial discretion of the common council in this case to adopt the foot-frontage rule in apportioning the assessment; and, if it was within their power, then the most that can be said against it on the ground that it worked inequitably in some cases is that it was an error of judgment. So far as this defendant is concerned, it does not appear that he has been assessed for more than his equitable share of the $36,000 to be raised, —and it does appear that his benefits greatly exceed the amount of his tax. He owns four occupied lots fronting on streets through which the sewer was laid. His frontage is 231 feet, and his tax is $83.16. From this there is no ground for any suggestion that a wrong principle was adopted in the assessment. More than two-thirds of the cost of the sewer system was borne by the city at large. Less than one-third was assessed upon the property abutting on streets through which the sewer ran. The rule of assessment prescribed by the law was on a basis of benefits to the property. The system is supposed to endure, and belongs to the class of improvements called permanent. On the principle of benefits derived by the abutting owner the cost of street pavements, sidewalks, and like improvements are assessed, and usually by the direct authority of the legislature, upon the foot-frontage rule. So this rule has almost universal recognition in matters of local improvements. Conde v. City of Schenectady, 164 N. Y. 258, 58 N. E. 130; People v. Pitt, 169 N. Y. 521, 62 N. E. 662. The term "benefits derived thereby" serves to convey the idea of highest equity.

The difficulty is not in understanding its meaning, but in formulating any rule for its practical application. As said by the court of appeals in People v. Pitt, 169 N. Y. 528, 62 N. E. 664:

"In spite of all the precautions that the wit of man has ever been able to devise, taxation cannot be made to operate equally or justly upon every individual. Whatever rule or principle is adopted for the distribution of the burden, there will still be cases where one man pays more and another less than his share. No principle of apportionment can be adopted that will not in some degree be open to objection."

This was said in a case where the foot-frontage rule was fixed by the legislature in assessing the cost of a sewer, and the court, in its opinion, continues:

"Some other principle might, indeed, operate more fairly upon some particular individual, but upon the whole the rule adopted by the legislature in the charter was, perhaps, as fair as any other that could be devised. * * * It may be that the sewer was a greater benefit to one than to another, but objections of this character could be made whatever principle was adopted."

The suggestion that apportionment should be made upon the basis of the value of the abutting property is more seriously objectionable than the foot-frontage plan. A dwelling house worth $1,000 has as great need of a sewer (and a sewer may be used to as great an extent) as a dwelling house worth $10,000. To say that the one should pay ten times as much as the other for precisely the same volume of benefits is the expression of the grossest inequality. A hotel worth $20,000 should pay more than one-half as much as a warehouse worth $40,000. The sewer is of no benefit whatever to the warehouse and of great benefit to the hotel. Equity would require this principle of assessment on the basis of benefits to be wholly discarded. To take as a unit for apportionment the present use of the sewer, determined by the quantity carried by the sewer from any house, might be highly equitable as a measure of to-day's benefit, but it would be also highly novel, and not an entirely stable unit. The sewer waits without change, but the house faucets and bath tubs increase or diminish with the whims of the house occupant. If the standard taken is the rental value, it is easily seen that the rental value of dwelling houses would be materially increased, but the rental value of a commercial building and of a vacant lot would not be increased. It is plain that the market value of a vacant building lot would be enhanced in precisely the same amount as would that of a lot with a dwelling house upon it having the same frontage. The increase would not be in the ratio of comparative values. It seems to me that, the improvement being a permanent one, equally useful to every portion of the abutting property,—that is, every portion of the abutting property having the equal right and opportunity to use the sewer,—makes its construction and maintenance a proper burden to all, measured out by the foot-frontage rule. I can conceive of no fairer measure of benefits held out to the abutting owners, and no fairer rule by which to apportion the burden of construction. I do not see how, under the circumstances, it can be said as a matter of law that the common council had no right to adopt the uniform rule of assessment by lineal foot,—a rule so generally recognized by the legislature and the courts as a proper rule of assessment for local improvements. If, after considering all the facts, they

deemed this rule the most equitable in this locality, they had the power to so determine. If there was any error, it was only an error of judgment, and that does not make the assessment void. O'Reilley v. City of Kingston, 114 N. Y. 448, 21 N. E. 1004, was a case of assessment for a local improvement (a street pavement) on the basis of benefits to abutting owners. The court, in its opinion, said:

"It will be observed that the land to be assessed must be that bordering on or touching the street, and that it was the duty of the assessors to determine the benefits derived by the owners of such land as does border on or touch the street improved. In thus determining the benefits, the assessors act judicially. They had an opportunity to examine the premises personally, and were thus possessed of information which cannot be brought before a court on review. * * * Their judgment upon the question as to the amount of benefit derived cannot be here reviewed unless they acted upon an erroneous principle in making the assessment. It appears that they reached the conclusion that the tax should be apportioned among the owners of the real estate bordering upon the street according to the number of feet front owned by each individual. This is not necessarily an erroneous principle, if it was their judgment that each owner was benefited in that proportion. On the other hand, it may be the most just and equitable of any that could be adopted."

The Cruger Case, 84 N. Y. 619, was a similar one. In that case the court of appeals said:

"The objection to the principle upon which the assessors acted in making their assessment for benefit is equally unavailing. The conclusion reached by them was a matter of judgment on their part. It was their duty to judge. They had opportunity to examine personally. Elements went to the formation of their conclusion which cannot be placed before us. We cannot say their determination was erroneous, even if it was exposed fully to review. To criticise the results of their judgment would practically require that we should ourselves try every question of value and of benefit, and that, too, upon evidence different from that before the assessors. Their error of judgment, if in fact it existed, was not an error in the proceedings, and not the subject of our review under the statute."

It must be borne in mind that the tax imposed in the case before us was in each instance less than the value of the benefits derived. The excess of the value of the benefits over the tax was in the nature of a donation by the city at large to the abutting property and its owners. If, in the distribution of the donations by any practicable rule necessarily uniform in its working, any donee finds his gift to be less than that of his neighbor, it should not be taken as conclusive evidence of a fatally erroneous rule, because it must be conceded that, measured by that standard, every rule would be fatally erroneous. Instead of assailing the rule, the force of the grievance rather runs against the perfection of human judgment and its capacity to formulate a rule which in every instance will work out exact justice to every individual.

The case called to our attention by appellant (In re Klock, 30 App. Div. 24, 51 N. Y. Supp. 857) was a direct review of the proceedings of the assessing body, and the court in that case was particular to point out the difference between the rule applicable in such cases and the rule governing in a collateral attack upon the correctness of the assessment. The very learned discussion of the court in that case is interesting, but, except in similar cases, is not controlling. The apt quotation of the learned justice writing in that case is also instructive here:

"If, as it sometimes happens, broader statements were made by way of argument or otherwise than were essential to the decision of the questions presented, they are the dicta of the writer of the opinion, and not the decision of the court. A judicial opinion, like evidence, is only binding so far as it is relevant; and when it wanders from the point at issue it no longer has force as an official utterance."

The Klock Case, like the one before us, was an assessment for benefits in the construction of a sewer, and the assessment was there also upon the foot-frontage plan. The court held that under the facts of that case it was so far inequitable as to be an error of judgment on the part of the assessing body. The conclusion there in no way helps to determine that in the case before us the entire assessment is void for lack of jurisdiction to determine that a foot-frontage rule was the proper one.

The judgment should be affirmed, with costs. All concur.