PEOPLE ex rel. O'REILLY v. COMMON COUNCIL OF CITY OF
KINGSTON et al.

(Supreme Court, Appellate Division, Third Department. ·June 27, 1906.)

1. MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—ASSESSMENTS—CHANGE
OF GRADE.

Where, notwithstanding the passage of certain ordinances establishing
the grade of a street, no change in fact on the surface of the ground had
been made prior to a re-establishment of the grade at the time the
street was improved, and before an adjoining property owner had in-
curred any expense in improving the property with reference to the grade
as previously established, the re-establishment of the grade without be-
ing petitioned for as required by the city's charter (Laws 1896, p. 974, c.
747, § 148), did not invalidate an assessment against such owner for the
improvement of such street.

2. SAME—IMPROVEMENT OF SEVERAL STREETS—SINGLE CONTRACT.

Where four separate ordinances were passed for the improvement of
certain streets and the construction of a sewer, and by the aid of the
contractor's and engineer's estimates the cost of each separate piece of
work was ascertained and the assessments made separately for each, the
proceedings were not fatally defective because the entire work was let in
one contract for a single sum.

3. SAME—METHOD OF ASSESSMENT—BENEFITS.

Kingston City Charter, Laws 1896, p. 972, c. 747, § 147, provides that
when the common council causes any street which has not been previously
improved at the expense, in whole or in part, of the property fronting
thereon, to be graded, it may determine what part, not exceeding 25 per
cent. of the expense is to be paid by the city and what part by special
assessment on the property fronting on such improvement. It also au-
thorizes the construction of sewers, and in like manner authorizes the
common council to determine the proportion to be paid by general tax
and by special assessment against "property immediately benefited there-
by," and requires the assessor to make a just and equitable assessment
against the owners or occupants of the land deemed to be benefited, as-
sessing each in proportion to the benefit which, in his judgment, has been
derived from the improvement. Held, that assessments for grading streets
and for sewers must be laid on the owners or occupants of the property
deemed to be benefited in proportion to the benefits which in the judgment
of the assessor have been derived from the improvement, but that in case
of grading the area of the assessment is limited to the property fronting
on the improvement.

4. SAME—FRONT-FOOT RULE.

Where an assessor of special assessments for street improvements
claimed that he assessed each parcel in proportion to the benefit which,
in his judgment, had been derived from the improvement, and stated in
his return to a writ of certiorari that he had considered the market values
of the properties assessed, whether the lands were improved or not, their
value, character, and nature of the improvements, if any, the value of the
lands as derived from the improvement, if any, and as derived from the
location of such improvements, the nature of the property, for what pur-
pose the lots were used or could be used, etc., the fact that they were
assessed by the front-foot rule did not establish that they were not as-
sessed in proportion to benefits.

5. SAME—CERTIORARI TO REVIEW ASSESSMENT.

Objections to a special assessment for street improvements not made be-
fore the assessor on grievance day cannot be reviewed on certiorari.

Cochrane, J., dissenting.

Certiorari by the people, on relation of Cecelia B. O'Reilly, against
the common council of the city of Kingston and others to review a

special assessment for the grading of certain streets and the construction of a sewer therein. Writ vacated. Proceedings dismissed.

The proceeding is one brought to review a special assessment to defray the expenses of grading Mary's avenue, Andrew street, and Laven street, in the city of Kingston, and for constructing a sewer in such avenue and streets. The grading of each of these streets and avenue was authorized by a separate ordinance for each, and a separate ordinance was passed for the construction of the sewer. The common council, by a resolution thereafter adopted, consolidated all of said improvements into one general plan, and authorized the city engineer to prepare plans and specifications for the work of grading the three streets and for the construction of the sewer therein, and thereafter the whole work was let in one contract. The plans and specifications so prepared contain a detailed statement of the number of cubic feet excavation and filling necessary for the grading of each of the streets stated separately. Thereafter a committee of the common council ascertained and reported the cost of grading each street and avenue separately, and the cost of the construction of the said sewer. Such report was adopted by the common council, and it by resolution directed the assessor to make the assessments therefor in accordance with the provisions of the charter of said city and the ordinances relating thereto. The assessment was made for the cost of grading each street and for the cost of the sewer separately. With the exception of one piece of property, all of the relator's property within the entire assessment district is unimproved vacant property, and is used for a cow pasture. Much of the other property within such district is improved property. The relator has no property on Laven street. Pursuant to the charter 25 per centum of the cost of grading said streets and constructing said sewer was charged upon the city at large and 75 per centum was assessed upon the property claimed to have been benefited thereby.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

John G. Van Etten, for relator.
Frederick E. W. Darrow, for respondent.

CHESTER, J. The relator first attacks the several assessments, made against her property as having been made without jurisdiction, because there was a change of the established grade on Andrew street without any petition therefor, in violation of section 148 of the city charter (Laws 1896, p. 974, c. 747), which, so far as material, reads as follows:

"When the grade of any street or highway has been established, it shall not be changed except upon the petition of the owners of a majority of the lineal feet fronting on the street, or part thereof, on which the grade is to be changed, nor unless compensation be made to the owners claimed to be injured by such change of grade."

It appears that the common council in 1898 passed an ordinance establishing the grade of Andrew street; that another ordinance was passed establishing the grade in 1900, and that a third ordinance amending the ordinance of 1898, repealing the ordinance of 1900, and establishing the grade of such street, was passed in October, 1903; and that the work resulting in the assessment complained of was done pursuant to the last-named ordinance. It appears that until the work in question was undertaken there had been no change in fact on the surface of the ground on Andrew street, except that the city had at its own expense removed a portion of a ledge of rocks thereon. Until

that time the established grade existed only on paper in these ordinances. The relator had made no improvements and had incurred no expenditure with reference to such established grade. The grade "established" by the final ordinance made slight changes only in that fixed by the prior ordinances, and it is questionable whether the cost of the improvement with the grade as finally fixed was much, if any, greater than it would have been with the grade as stated in the two ordinances which have been displaced. The statute preventing the change of an established grade, except upon a sufficient petition, was made for the protection of property owners and to provide compensation for any injuries sustained by them by reason of a change of grade. No such injury to the relator appears in this case. The case of Folmsbee v. City of Amsterdam, 66 Hun, 214, 21 N. Y. Supp. 42, affirmed 142 N. Y. 125, 36 N. E. 821, cited by the relator as authority for her contention, is fairly distinguishable from the case here; for in that case the change was a substantial one and the grade had been established by a long user and had existed for many years. The street had in fact been graded and improved by the municipality, and many houses were built compactly on each side of the street, conforming to the grade of the street as it existed before the change was made.

I think the relator is not afforded such a grievance by the change in the ordinance establishing the grade, made, as it was, before she had incurred any expense in improving her property with reference to the grade first fixed, and before anything had, in fact, been done to change the surface of the street to conform to such grade, as will enable her to urge that the assessment against her is void because the change was not petitioned for as required by such section 148, and that the facts presented do not constitute a change of an "established" grade within the meaning of that section. Nor do I think that the relator is aggrieved because the work of grading the three streets and the laying of the sewer was let in one contract for a single sum, when four separate ordinances were passed authorizing the work. By the aid of the contractor's and engineer's estimates, the cost of each separate piece of work was ascertained and the assessments were made separately for each. The common council deemed it advantageous for the city to let the entire work in a single contract, and nothing appears to show that the relator was injured thereby.

It is also urged by the relator that the assessments are unjust and inequitable, and not in preportion to the benefits derived from the improvements. Section 147 of the city charter (chapter 747, p. 972, Laws 1896) provides that when the common council causes any street which has not been previously improved at the expense, in whole or in part, of the property fronting thereon, to be graded, it may determine what part, not exceeding 25 per cent., of the expense is to be paid by general tax upon the city and what part shall be paid by special assessment on the "property fronting on such improvement." The same section authorizes the common council to construct sewers, and in like manner determine the proportion to be paid by general tax and by special assessment against the "property immediately benefited thereby." It also provides that the assessor "shall make a just and equitable

assessment of the costs and expenses of such improvement as audited by the common council against the owners or occupants of the lands deemed to be benefited, assessing each parcel in proportion to the benefit which, in his judgment, has been derived from said improvement."

It is clear under these provisions of the charter that the assessments for grading the streets and for the sewer must be laid upon the owners or occupants of the property deemed to be benefited in proportion to the benefits which, in the judgment of the assessor, have been derived from the improvement, but that in case of grading of a street the area of the assessment is limited to the property fronting on the improvement. The grading assessments appear to have been so limited, but in laying the assessments for both the grading and the sewer a computation shows that the assessor followed what is known as the "foot-front" plan; that is, that he apportioned the cost among the lot owners in proportion to the frontage of each lot upon the street. The relator urges that this has resulted in a gross inequality as to her, as her property, with the exception of one lot, is vacant and unimproved, while much of the other property is built upon, which largely increases its value. This does not necessarily follow. No plan of assessment has yet been devised which will result in absolute equality between properties differing in use and in value. The assessor was charged with a judicial duty in apportioning the cost of these improvements, and was required to assess it upon the property which, in his judgment, had derived benefit therefrom in proportion to the benefits derived. Nothing indicates that he has not done this. If he exercised his best judgment, and if he has not followed an erroneous principle in making the assessment, it should not be set aside simply because he has made it upon the "foot-front" plan. It may be that after taking into account all the improvements and the differences in value between the separate pieces of property assessed, caused by such improvements, he deemed this rule to be the most just and equitable. It would seem that this plan is sanctioned by authority with reference to assessments for grading and paving, where the law requires them to be laid upon the property fronting upon the improvement. O'Reilley v. City of Kingston, 114 N. Y. 439, 21 N. E. 1004. So, too, the same rule has been applied to assessments for the construction of sewers laid upon property deemed to be benefited. City of Ithaca v. Babcock, 72 App. Div. 260, 76 N. Y. Supp. 49; Providence Retreat v. City of Buffalo, 29 App. Div. 160, 51 N. Y. Supp. 654.

While the assessor here has followed the "foot-front" plan in laying the assessment, he denies the allegation in the petition that it was not made against each parcel in proportion to the benefit which in his judgment had been derived from said improvement, and says in his return that in making the assessment he "took in consideration the market values of the properties assessed, whether the lands assessed were improved or not, their value and character and nature of the improvements, if any, the value of said lands as derived from such improvement, if any, and as derived from the location of said improvements, and as to the prospective expense or difficulty of connecting said lands and the buildings thereon with the sewer so as to make use of the same, the nature

of the lots, for what purpose they were used or could be put to, whether the lot was used for residential or business purposes, the market and assessed value of the lot, whether or not the lot could be connected with the sewer, whether it was near or at some distance from the sewer, and in no case was any lot assessed at a fixed rate per foot front without taking into consideration all the matters hereinbefore stated and that in all portions of the whole territory assessed in which a fixed rate per foot front was used such rate was determined by taking into consideration all the matters, things and considerations above mentioned." He also says that the property of the relator has no particular value except as building lots, and for those purposes it has considerable value, as it lies in the center of the city, immediately off Broadway, the main street of the city, and that in order to make the property worth anything for sale it was necessary to open up streets through it and to improve them. It does not necessarily follow that because the assessments were made at a fixed rate per lineal foot front that the assessor did not take into consideration the things which he says he did in fixing the rate; for that differs upon the different streets. The plan has undoubtedly resulted in some inequalities when the present uses of the property only are considered, but, when taking into account the benefits received because of uses for which the relator's property has been made available by reason of the improvements and to which it may be put in the future, it can not be said that there are any inequalities of such a character as require the assessments to be vacated to prevent injustice to her.

The relator also points out one lot upon which she claims there has been a double assessment, and also the omission of several lots included within the assessment district shown upon the map prepared for the sewer assessment, but, as these questions were not raised before the assessor or by the petition of the relator, they cannot be reviewed in this proceeding. Matter of David Clark, 31 Hun, 198. If these matters had been called to the attention of the assessor on grievance day, they might have been remedied. It is too late to complain of them now.

The writ of certiorari should be vacated and the proceedings dismissed, with $50 costs and disbursements to the respondents. All concur, except COCHRANE, J., dissenting in opinion.

COCHRANE, J. (dissenting). Section 147 of the charter (chapter 747, p. 972, Laws 1896) requires that the special assessment for the grading must be "on the property fronting on such improvement," that the special assessment for the sewer must be "against the property immediately benefited thereby," and that in either case the assessor "shall make a just and equitable assessment of the costs and expenses of such improvement as audited by the common council against the owners or occupants of the lands deemed to be benefited assessing each parcel in proportion to the benefit which in his judgment has been derived from said improvement." By section 151 of the charter it is required that "all improvements to be paid for by special assessment shall be by contract let to the lowest responsible bidder and shall be paid for only from the funds raised, levied and collected for such improvements." It thus

appears that the special assessments for the grading and for the sewer fall on different classes of property. In the case of grading, such assessment is limited to "the property fronting on such improvement." In the case of a sewer, the assessment is "against the property, immediately benefited thereby," which may include other property than' such as fronts on the improvement. The cost of the grading and of the sewer was included by the common council in one contract. Separate bids were not asked for or received. How, then, could the assessor apportion the cost of the grading and the cost of the sewer on the separate classes of property as required by the statute? My notion is that there can be no compliance with this statute unless separate bids are received for the grading and for the sewer. Appreciating the difficulty, the common council directed the contractor to divide his bid after it had been accepted, and undertook to apportion the contract price so as to make a part thereof the price of the sewer and the remainder the price of the grading; but, of course, this was no compliance with the statute. Such a method was an entire departure from the scheme of the statute, which requires the cost of the improvements to be fixed by competitive bidding, and then that the portion of such cost as thus determined which is to be paid by special assessment shall in the case of grading be assessed against one class of property, and in the case of a sewer be assessed against another class of property. Probably it is not necessary for a person to raise this objection before the contract is made, for the reason that he cannot be supposed to know beforehand that the common council will ignore the statute. But it is worthy of note that the relator in her objections presented to the common council at the same meeting when the bids were received, and before the contract was let, specified as one of her objections "that there can be no equality in the assessment if said Levan street, Andrew street, and Mary's avenue are graded and sewered if the contract is let under one contract."

Moreover, the common council divided the contract price of the improvements into four amounts, and arbitrarily directed that one specified amount be assessed for the construction of the sewer; that another specified amount be assessed for the grading of Andrew street; that another specified amount be assessed for the grading of Levan street; and that another specified amount be assessed for the grading of Mary's avenue, and by resolution directed the assessor to make the assessments accordingly, and in this manner the special assessments against the individual property owners were made. It seems to me that this was a clear usurpation of the functions of the assessor, who, by statute, is charged with the duty of making the assessment "against the owners or occupants of the lands deemed to be benefited assessing each parcel in proportion to the benefit which in his judgment has been derived from said improvement." I do not think the assessor can be deprived or relieved of this duty or of any part thereof by the common council, or that an assessment made in this way partly by the common council and partly by the assessor is a compliance with the statute. "The statute must be strictly pursued, and any departure in substance from the formula prescribed by law vitiates the proceedings. The party whose

property is to be reached may insist upon the observance of every form prescribed by statute which will in the least tend to his protection. In other words, the form must be strictly followed." Merritt v. Village of Port Chester, 71 N. Y. 309, 27 Am. Rep. 47; Stebbins v. Kay, 123 N. Y. 35, 25 N. E. 207; Newell v. Wheeler, 48 N. Y. 486.